466

**BROW et, Plaintiffs-Appellants, v. SHERWIN-WILLIAMS CO.,
Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22198. Decided February 11, 1952.

William C. Bracken, for plaintiffs-appellants.
Jones, Day, Cockley & Reavis, Victor DeMarco, Cleveland, for defendant-appellee.

(DOYLE, J, of the 9th District, sitting in place of HURD, J.)

## OPINION

By DOYLE, J:

This is an action in equity in which the plaintiffs ask for an injunction and equitable relief against the defendant, The Sherwin-Williams Company, restraining the said company from constructing a building, "and from operating * * * (a) printing establishment or other commercial undertaking or enterprise, on or in connection with" its premises in North Olmsted, Ohio, and for such other and further orders and relief as the plaintiffs shall be found entitled to receive.

Specially, it is charged that there was,

"1. Failure to comply with Article VII, Sec. 29—sideyards. "Failure to comply with Article VIII, Sec. 35—plats.

"Failure to comply with Article VIII, Sec. 36—building permits—certificate of occupancy.

"2. Failure to comply with Article XI, Sec. 9—defining the uses permitted.

"3. Failure of the council and members of the planning commission to comply with §4366-1 GC, and the Zoning Ordinance of North Olmsted, in attempting to amend Ordinance No. 592 by the so-called amendment No. 825.

"4. Frederick L. Crider and the Village of North Olmsted had been requested to rescind the building permit issued to the Sherwin-Williams Company in violation of the zoning ordinance, and the Sherwin-Williams Company has wilfully ignored the provisions of said zoning ordinance in attempting to construct a building contrary to its provisions."

The answer, aside from various admissions, pleads a general denial and laches. The reply generally denies the defenses pleaded.

The action is presented to this court for trial de novo, with a record containing approximately 1800 pages, and more than 100 exhibits containing many tens of thousands of words. The briefs extend over 287 pages. The extent of the record is here

stated to indicate that an attempt on the part of this court to set out in detail its analysis of the many factual questions would be a work of supererogation; the many questions involved with the claims for and against are well known to counsel. Our findings will be confined mostly to ultimate facts and not to detailed analysis of evidentiary facts bearing thereon.

1. "Sideyards." In respect to the claim of a non-compliance with the ordinance requiring "sideyards" for buildings of this character in this zoned area, this court finds the fact to be that there is sufficient distance between the building and the property line to satisfy the terms of the ordinance. The ordinance does not prohibit filter beds and septic tanks from being located within the five-foot area as set forth in the ordinance, nor is such an installation an accessory structure within the meaning of the ordinance. The argument that the width of "downspouts" must be deducted from the distance between the building and the property line in determining the width of the "sideyards" we think is untenable.

"Plats." Sec. 35, Article VIII, provides that application for building permits shall be accompanied by a plat setting forth certain specified information, so as to "enable the administrative officer to determine that the proposed structure and use of the land will conform to the provision of this ordinance."

It is claimed that the above section was "completely ignored." This claim we find to be without foundation. The evidence indicates a substantial compliance therewith.

"Building Permits—Certificates of Occupancy." Sec. 36, Article VIII, in effect provides that construction of a building shall not be commenced "until a permit therefor shall have been issued by the administrative officer. No such permit shall be issued before application has been made for a "certificate of occupancy." The section further provides that a building shall not be used until a certificate of occupancy has been issued, which certificate "shall be issued within ten days after the erection or alteration of which building or part shall have been completed in conformity with the provisions of this ordinance."

In appraising this claim of the plaintiff that this section of the ordinance was ignored, we find from the evidence that, while a formal application for a certificate of occupancy was not made prior to, or at the time of, the issuance of the building permit, nevertheless, the use to which the building was to be put was well known to the officials in charge at the time of the issuance of the building permit, which in effect was a

fulfillment of the purpose of an application for a certificate of occupancy.

This technical default cannot form the predicate for injunction when in fact a certificate of occupancy was later issued before it was used. The certificate is in the following terms:

"Having inspected and found that the building code and zoning ordinance of the Village of North Olmsted have been complied with, I hereby issue certificate of occupancy to The Sherwin-Williams Co., to use the structure located at 27254 Lorain Road as a printing establishment. Any change in the use of the structure or premises from the above must be approved by the administrative officer, and a certificate of occupancy authorizing new use to be issued."

This certificate was duly signed by the building commissioners and the fire chief.

There is no evidence to justify a conclusion that a conspiracy existed between the building commissioner and the company's agents to violate the zoning laws, as claimed by the plaintiff.

We find a substantial compliance with the ordinances on this claim of the plaintiff, and the technical departure as herein shown is not, in the judgment of this court of equity, sufficient ground for injunction.

2. "Failure to comply with Article XI, Sec. 9, defining the uses permitted."

This section of the ordinance in part provides:

"Retail or Local Business Districts. Within any retail or local business district, no building or premises shall be erected, used, arranged or designed to be used, in whole or in part, for other than one or more of the following specified uses:

"1. All uses permitted and regulated in any residence district.

"2. Business uses as indicated in this section, including:

"(a) * * * Print Shops."

It is claimed that the operation of the defendant company in the use of the building does not comply with the permitted uses, that the business conducted does not come within the category of a "Print Shop." It is asserted that the ordinance makes "provision only for a retail or local business * * * for the convenience and service of, and dealing with and accessible to, the ultimate consumer." In other words, it is claimed that under the ordinance, all "local business" must be retail in character.

It does not appear that the defendant's business is retail in character. It does appear, however, that the business con-

ducted is not a manufacturing enterprise, as that term is used in business circles, but does come within the classification of a "local business."

In interpreting the ordinance, we are of the opinion that the lawmakers intended to permit two kinds of business ventures in this district: first, a "retail business," as defined in the legislation, and second, any "local business" not retail in character, but especially provided for.

It is our conclusion, therefore, that the business of the defendant does not conflict with the ordinance, but comes squarely within permitted local businesses.

3. "Failure of the council and members of the planning commission to comply with §4366-11 GC, and the Zoning Ordinance of North Olmsted, in attempting to amend Ordinance No. 592 by the so-called amendment No. 825.

The following rules set forth in the village ordinances and the General Code provide the procedure for the amendment of ordinances:

Article IX, Sec. 38 provides:

"(a) The Village Council may, from time to time, on its own initiative, or on petition signed by a majority of the property owners according to frontage in any district, or portion thereof as large as one city block between two intersecting streets, amend, supplement or change the regulations, restrictions, or district boundaries herein established or subsequently established. This shall be done only after reference to and report by the Village Planning Commission; and after public hearing, notice of which shall be given in a newspaper of general circulation in the Village not less than thirty days prior to such hearing, as provided by law."

"(b) In case the proposed amendment, supplement or change be disapproved by the Planning Commission, such amendment, supplement, or change shall not be passed except by an affirmative vote of not less than three-fourths of the full membership of council. In considering such proposed amendment, supplement or change, the Planning Commission shall give weight to any protest presented, duly signed and acknowledged by the owners of twenty (20) percent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear or adjoining on the sides thereof extending one hundred (100) feet from the street frontage of such opposite lots."

Sec. 4366-11 GC provides for the amendment of zoning ordinances, "But no such amendment or change shall become effective unless the ordinance proposing such amendment or change shall first be submitted to the planning commission,

board or officer for approval, disapproval, or suggestions and the planning commission, board or officer shall have been allowed a reasonable time, not less than thirty days, for consideration and report." The section continues by providing for a public hearing before passage by the council, publication and the filing of maps, plans, reports, etc., for the purposes of public inspection.

In respect to the claim that the ordinance was not legally initiated, we find that after the council's attention had been drawn to the desires of the Sherwin-Williams Co., the council on its own initiative commended the proceedings to amend the ordinance. This was a permitted alternative procedure. Thereupon, the matter was referred to the Planning Commission, which body, after consideration, recommended its passage; thereafter publication followed as required by law, and a public hearing was scheduled.

We fail to find from the record, proof of a serious failure to comply with the legal steps set forth by law for the amendment of ordinances, except in the one instance in which the planning commission made its favorable recommendation prior to the lapse of thirty days, as provided in §4366-11 GC, supra.

In consideration of this statute, we are of the opinion that the provision in respect to time is not of the essence of the legislation—at least where the evidence fails to show that the rights of persons were prejudiced. The mere fact that an ordinance directs the doing of a particular thing after a fixed time, does not necessarily mean that such act may not be done before such time, when the provision relating to time may be considered directory. The purpose of the time provision undoubtedly was to cause the planning commission calmly and slowly to deliberate the proposed legislation. However, there is nothing to show that the acts of the commission were anything other than the result of its free judgment, after a full knowledge of the facts and a deliberate analysis of the consequences. We are of the opinion that the conduct of the commission accomplished the substantial purposes of the statute, and that the deviation from the letter of the ordinance does not justify this court on that ground alone to grant injunctive relief.

4. Many other claims are made in an attempt to show a failure to pursue the necessary steps in the enactment of the challenged legislation. Examination has been made of them all, and our conclusion is that the plaintiffs have failed in their proof.

5. The defendant has asserted the defense of laches. This rule is grounded upon the requirement of reasonable diligence

in the commencement of claims. It pertains principally to the question of the inequity of permitting a claim to be enforced, which inequity is founded upon a change in the condition of the property of the defendant. Laches is not mere delay, but delay that works a disadvantage to another.

Thus, when one, knowing his rights, takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and may operate against the assertion of the right through the medium of injunction.

It would be difficult to read this record and conclude that the plaintiffs were not aware of the many steps taken in this small, compact community, by the defendant company and the village officials, directed toward the commencing of a business on the defendant's property.

To the contrary, the reasonable and logical inferences to be drawn from the evidence, establish the fact that they did know generally, and were in a position to know exactly, the facts which they now assert renders illegal the establishment of the business in question.

It appears that, before the plaintiffs formally commenced their protest, the defendant company had expended more than $150,000.00 on the building alone; that now there has been expended on the structure about $300,000.00 and approximately that amount has been expended for equipment. In addition to this, at the time of the original negotiations, the business gave promise of employment to many of the local residents, who now are there gainfully employed.

As heretofore stated in different words, the doctrine of laches proceeds on the assumption that the party against whom laches is charged has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that, by reason of his delay, the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of a change in condition of relations during the period of delay, it would be an injunctive to the latter to permit them now to assert them.

We believe that the facts in the instant case, bring it within the foregoing principles. The first step in the creation of the business was well advertised and well known to the officials, adjoining property owners and residents in general of this community. Each step taken before the official bodies was well known or could have been known by interested persons. There was nothing clandestine in the conduct of any of the parties in their efforts to secure the necessary legisla-

tion and official permits to commence the proceedings for the construction of this business enterprise.

It appears to this court that, if this defendant is restrained from operating, many persons will be seriously affected and great damage will result to the defendant, and this result will be brought about by a decree of a court of equity rendered in the enforcement of asserted rights of the plaintiffs, who, if they had taken timely action, could have adequately protected themselves from injury without resulting wrong to the rights of others.

It is our conclusion that the plea of laches has been adequately established.

Decree for defendant appellee. Exceptions. Order see journal.

SKEEL, PJ, THOMPSON, J, concur.