**CONNELLY et, Plaintiffs, v. MORRIS, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 662518.

396

Morris Berick of Halle, Haber, Berick & McNulty, Cleveland, for Robert Morris.

Harold Bell, Leo Rattay, Cleveland, for Connelly and other defendants.

## OPINION
By FULTON, J.

### STATEMENT OF CASE

Connelly and others seek an injunction against the completion of the erection of a single residential house by Defendant Robert Morris on North Park Boulevard, and additionally seek a mandatory injunction to require either demolition of the structure to the extent now finished, or change the structure or remove part thereof. These requests are predicated upon the alleged failure of Morris to cause his house to be constructed at a distance of 100 or more feet from the street.

The Plaintiffs did not seek a preliminary restraining order or a temporary injunction in which event they would have been required to, and therefore they did not, place bond to indemnify Defendant Morris against loss or damage should they fail in their litigation efforts. (It is recognized that Plaintiffs were not required to seek either a preliminary restraining order or a temporary injunction.)

### DECISION

Plaintiffs' request for injunctive relief, restraining and mandatory, is denied and disallowed. Plaintiffs' petition is dis-

missed and a finding and judgment is entered for the Defendant at Plaintiffs' cost.

This determination is upon the facts and for the reason later set forth.

## THE FACTS

When the action was brought Morris had spent approximately $25,000.00 toward the construction cost of his house for which the contract price of erection is $49,650.

The complaint embraced in the petition is that the front of the house is nearer the street than 100 feet in violation of private or community restrictions (First Cause of Action) and of zoning regulations (Second Cause of Action) either of which, it is asserted require a "setback" of at least 100 feet.

There were originally a set of uniform area restrictions. These perhaps were subdivision restrictions although the evidence is silent about this. It was stated that these original restrictions required a setback of 100 feet. These original restrictions antedated the zoning setback restrictions Subsequently, however, to the zoning regulations, and because the area restrictions had expired, all of the people in the area, except nine, deeded their respective properties to a title company which reconveyed to these persons with new or revitalized restrictions. All of the residents on the north side of North Park Boulevard between Arlington and Fairfax, where Defendant's house is under construction, including Defendant's predecessor in title, joined in the propagation of these community or neighborhood restrictions. There are no houses or residences on the south side of North Park Boulevard between Arlington and Fairfax.

These new or revitalized restrictions require a setback of 100 feet. The Cleveland Heights zoning contains a restriction formula which, if valid, as applied to the territory in the next preceding paragraph, would require a setback of 100 feet.

All of the houses of this territory are, except Defendant's, set back 100 feet or more. The other houses are not set back uniformly at 100 feet. Some are set back more than 100 feet. Uniform symmetry is not maintained (Ex. "15"). There is no conventional sidewalk according to the testimony—if there is a sidewalk at all (Ex. "G"). Moreover the judge's view of the property on North Park Boulevard between Arlington and Coventry—which view is stipulated as evidence and not merely as a means to better application or better understanding of the evidence—, as well as other photographic exhibits show no tree lawn and indicate that North Park Boulevard is not a straight line in the front of the houses on the north

side thereof. It appears to curve easterly and westerly from a point about in front of the Defendant's house.

The house at issue is being built on a beautifully wooded lot with trees in front and in rear. The house is modern— yes, modernistic—in contrast to the stately mansions of an earlier period (Ex. "G," photographic exhibit as to the subject house and the Court's Ex. "2" as to the home of Plaintiff Connelly). As constructed, one front corner is 87 feet, rather than 100 feet, from the curb line on North Park Boulevard and the other corner is about 97 feet from that curb line. Defendant applied for and procured from The Cleveland Heights authorities, a permit to build his house. With it (Exs. "3" and "D") was filed a blueprine of plans. From these the setback of the proposed house was determinable The permit as issued (Ex. "4") states that it "is issued in accordance with and subject to all articles and provisions of the building code of the City of Cleveland Heights, Ohio and **other applicable ordinances and statutes.**" Many photographic exhibits taken by one of the Plaintiffs, show the progress of the work. All of the Plaintiffs, except the Schaabers, reside between Arlington and Fairfax. (Ex. "B".) The Schaabers are between Fairfax and Coventry. Therefore the purported presentation of Plaintiffs complaint is not limited to the territory between Arlington and Fairfax, but to the whole area in which the people resided who conveyed and received reconveyance to establish the new or revitalized restrictions.

## BASIS FOR DECISION

The result reached is upon the assumption that the restrictions of the community plan and of the zoning require a setback of 100 feet. (Actually this assumption is considered by this Court of doubtful validity.) It is not proposed to decide this case on constitutional grounds because other grounds will suffice and further because it is this Court's view that only reviewing Courts should, generally, decide constitutional questions. Nor is it intended to decide that the community restrictions are invalid on other than constitutional grounds.

By way of passing, however, it is the view of this judge that the zoning law of Cleveland Heights is constitutionally valid except as to the setback regulation. That regulation is a formula which neither a property owner nor any officer of the city could apply absent consent of all property owners on any given street, without trespass. Setbacks should be stated in distance in order to be clear and completely free from doubt. Treating the whole zoning ordinance including the setback provision as valid, it does appear, although this is not used, a basis for this decision that the application of this zoning

ordinance to this case, that is to say to this house in its present state, would be an arbitrary and unconstitutional application and the taking of property without due process and without just compensation.

Further by way of passing this writer—again not as a basis for decision and not on the basis of constitutional grounds—questions the validity of the community restrictions because they are not written expressly to bind all, if not all join in their creation. The case of **Blum v. Hodapp, 87 Oh Ap 45** (C. A. Montgomery County), at first blush appears contra. That case dealt with a subdivision plan. On the whole that case is not helpful to Plaintiffs here. (See its headnote 2, as well as page 49.) Moreover in America the free use and alienation of property is favored. Any restraint, whether legislative or otherwise, requires strict construction. Here the restrictions appear to provide a setback benefit which is inured to all property owners, and a garage requirement which inures to the benefit of the next door neighbor. (Which next door neighbor?) They also provide that the violation of the cost requirement results impliedly in demolition, whereas no such penalty attaches to the violation of the setback provision.

(Parenthetically, the Court thinks little of the argument of defense counsel based on the proposition "Who is grantee" That does not appear sound.)

Now beyond the remarks made respecting validity, constitutional or otherwise, of the community and zoning restrictions, Plaintiffs should not prevail.

They should not, in any event, prevail on the basis of the alleged zoning violations, sine §713.13 **R. C.** provides that the "municipal corporation" or "the owner of any contiguous or neighboring property who would be **especially damaged** * * * may institute a suit for injunction." The Court does not deem that any of the named Plaintiffs are especially damaged. This is based as much upon the judge's view as upon the other evidence in the case. Nobody on the Plaintiffs' side is a loser of air, view, or light. To them there is no obstruction to their air, view, or light by Defendant's house. Palm's view is, by reason of the greater setback of his house, lost by the Hingston and Dennison homes. Neither Hingson nor Dennison (the latter is not a party to this action) are injured. Whatever obstruction to view prevails are nature's good trees and this applies equally to Connelly and Dr. Jappa, whose places are scarcely seen, except by extraordinary eyestrain from the Morris home and its upstairs front porch. Billingslys, between Connelly and Jappa, are not parties and the Schaabers are beyond Fairfax. None of these people lose

light or air, nor does the Court think they have suffered special damages if that is included in the expression "especially damaged." The money loss testimony of Mr. Shields is discarded. It was general; and in any event its worth was destroyed by his volunteered statement that his buying or building in this neighborhood would minimize its value because he does not belong or would not fit there. This foolish statement was made to support his claim that "what type of people" live in the neighborhood is an evaluation factor. Indeed that statement led to an inference adopted by the Court to which allusion will be made later.

These statements about damages on the zoning cause of action do not apply to the community restrictions cause of action, since as to valid restrictions (whether subdivision or community) non-damage does not prevent one from seeking or obtaining an injunction. **Dales v. Albrecht, 11 Oh Ap 368.**

That the setback is 100 feet is the assumption as a basis for this decision. That Defendant's house is nearer than 100 feet resulted from a mistake. It was indeed a very careless mistake. Right then Defendant needed other than his own counsel. However, Plaintiffs' counsel did not say, in answer to the question of the Court, that Defendant surreptitiously built his house behind hidden bushes. Even now a complete view of the house is still obstructed by trees to some extent from the street and to a definite extent from the houses situated east and west.

Counsel for Plaintiffs did imply that there was acceleration of work after the Connelly letter. There was some accelerating which, under all the circumstances, the Court finds was natural: the contractors own and sub-contractors own work. This the Court finds was not an acceleration by the Defendant to "beat the gun," so to speak. This Court does not understand that why, in the absence of injunction, Defendant feared to complete his house. The Court thinks and finds that the failure arose not from the fear of risk involved, so much as a demonstration of neighborliness, plus the recognition of his own foolish mistake. The foolish mistake was about the distance of a wall from the street. The Court thinks the wall in the community restrictions means fence wall; but does it, since it is less restrictive than the earlier zoning restrictions on the same point. (See Ex. "H" and compare it to par. 3 of Ex. "6", the community restrictions.) Private restrictions subsequent to valid zoning restrictions, may be **more** but not **less** restrictive. Much was said about presumptive knowledge during the trial. Did not Plaintiffs have presumptive knowledge of the **zoning** wall restriction? Certainly they had such presumptive knowledge.

The Court finds that the Plaintiffs, honestly, but by self impression, subconsciously by after thought, described the wall they saw under construction, as "garden," or "patio" or "sample."

They saw.

They knew.

It appears that they now claim they did not know, yet they could and should have known by appropriate inquiry, by the exercise of diligence and by no means by snooping as hinted in Wrigley v. Newlon, 15 Ohio Supp. 78. Under all the facts and circumstances, it appears to and is found by the Court that the Plaintiffs acted unseasonably. One of the factors in laches is the time factor. It may arise in a few days and under some circumstances may not arise for one year or more.

The Court recognizes laches as an affirmative defense and if the burden of going forward or of proof is upon the Defendant to establish it, the Court now finds that upon all of the evidence defendant has established laches. The Court therefore finds the Plaintiffs chargeable with laches.

During April Defendant's house was staked; toward the end of May the controversial wall was completed (8 feet high and 16 feet long); by the middle of June the wall was faced; structural work, including joists, rafters in part of the building, was installed, as well as the roofing finished by July 15. 1954. This was seven days before Mr. Connelly's letter which he wrote for himself and assumed to write for others; and the others, now Plaintiffs, like Mr Connelly saw this wall. They might have inquired: What is it? Whose is it? The inquiry might have been made of the next door neighbor, Mrs. Gardener, or at the City Hall of Cleveland Heights. Mr. Connelly was at the City Hall. Surely he learned or could have learned about the setback. Yet the union of Plaintiffs as one came after the Connelly letter and the suit still later on August 4, 1954.

Swift diligence is required where restrictions are involved. Of course, one need not snoop but must be inquiringly diligent. There are few excuses for other than swift conduct under the circumstances of this case. These Plaintiffs were, except for one, on the scene and either knew or could have known the nature and progress of the work. They presumptively knew about the restrictions and readily could have known the physical situation, as it appeared and progressed, and to which the restrictions applied. The natural obstruction to the view of the progress of work now offered as an excuse may now be proffered as an obstruction of view to an unsightly modernistic house, as some may consider it. From

all of the evidence including the Court's view of the house, street and territory, the inference is drawn that one of the reserved objections of Plaintiffs is the architectural design; and the Court from Mr. Shield's testimony, infers that there is a reserved objection to the type of new resident, exemplified **among other things** by the modernistic home.

Mr. Connelly speaking for all—perhaps prematurely—and mayhap only for self said he could see that "the residence which you are constructing appeared closer to North Park than the next adjoining residence which is occupied by Mrs. Gardener" based on his "recently driving by" Defendant's property.

Mr. Connelly is a good citizen. He was and always has been watchful that no serious changes should take place in his neighborhood. For this zeal he is complimented. At the same time he must under all of the circumstances assume the risk of any lack of diligence. That same letter says he "went to the Building Inspection Department of Cleveland Heights and found from your (Defendant's) plans" about the set-back violation. That could have been ascertained in the same manner earlier by him or the other Plaintiffs since the plans were filed with the application for permit. To be sure the other Plaintiffs appeared to rely on Mr. Connelly and because of that, as well as their own respective failure, are chargeable with laches.

Estoppel in its technical sense does not seem to apply. Yet one queries about this when he reads **Brow v. Sherwin Williams, 63 Abs 466** (Cuyahoga County).

In any event the general equities are with defendant. The restraint and compulsion sought will cause, if allowed, more harm to Defendant Morris than any good or benefit to Plaintiffs.

Indeed the Court finds that to allow the relief would clearly harm Morris and would not materially benefit Plaintiffs; whereas the denial of such relief will do no harm to anybody. None of the Plaintiffs will be caused either general or special damage if Defendant is allowed to complete his house. This doctrine is pronounced in Brow v. Sherwin Williams, Supra, decided February 1952.

The Court specifically finds that, notwithstanding, the set-back violation, the house in process of construction will benefit, beautify and complement the other properties in the neighborhood and might even add to their property values and ultimately lead to changes for betterment elsewhere in the neighborhood either by new construction or modernization. This latter remark is not too remote when the Court infers

that architectural design rather than setback is one of the two ghosts in the background.

The Court does not follow the case of Morgan v. Veach, 59 Cal. App. (2nd) 684 as authoritive. The case is distinguishable by its headnote or syllabus 3 where the subject of balancing conveniences is summarized and in connection with which it is stated that one who acts with full knowledge as the Court finds the Plaintiffs in this case did, is not entitled to the benefit of the doctrine—even if the balancing of such equities favor the Plaintiffs. Here, the Court finds, the balancing of equities or conveniences favors the Defendant. Nor does **Dale v. Albrecht, 11 Oh Ap 368,** involving the removal **only** of a closed porch, apply to the situation here except in the limited sense heretofore noted.

The case may be appealed either on questions of law or on questions of law and fact. The latter appeal requires a bond as a jurisdictional requirement. Having in mind the amount Mr. Morris has already invested in the construction of the house and the possibilities of deterioration by the winter elements, bond is fixed at $30,000. This matter of bond amount is subject to further conference with counsel.

The question of supedsedeas may arise if the appeal is on questions of law only, absent which supersedeas the parties perhaps remain as if there was not litigation.