THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Responsible Economic Development, Carolyn JeBaily, Peggy Brown, Rachell Hyman, Walter Sallenger, Its Members and Directors, Appellants,
 
 
 

v.

 
 
 
 The Florence Consolidated Municipal Planning Commission, City of Florence, South Carolina, Hewitt Land Company, Inc., Trinity Evangelical Presbyterian Church, Inc., Wal-Mart Stores East, LP, and R. Jerry Hewitt, Respondents. 
 
 
 

Appeal From Florence County
James E. Brogdon, Jr., Circuit Court Judge

Unpublished Opinion No. 2005-UP-584
Heard October 11, 2005  Filed November 16, 2005    

AFFIRMED

 
 
 
John J. Pringle, Jr., and John F. Beach, of Columbia, for Appellants.
Charlie James Blake, Jr., and D. Laurence McIntosh, of Florence; Frances Cantwell, William B. Regan, and James Dunbar Myrick, of Charleston; John Jay James, II, of Darlington, for Respondents.
 
 
 

PER CURIAM: Responsible Economic Development (RED) appeals a circuit court order upholding the Florence Consolidated Municipal Planning Commissions (Planning Commission) approval of Wal-Mart Stores East, L.P.s site development plan to construct a SuperCenter and shopping complex in the City of Florence.  RED challenges the zonings of the two parcels of land on which the SuperCenter will be built and argues the Planning Commission failed to comply with state enabling legislation in approving Wal-Marts construction.  We affirm.
FACTS
Pursuant to the South Carolina Local Government Planning Enabling Act of 1994 (Act),[1] Florence County and the municipalities within Florence County, including the City of Florence, formed the Planning Commission which designed a Comprehensive Plan (the Plan).  The County and City then adopted the Plan, together with a Consolidated Zoning Ordinance (Zoning Ordinance) and Land Development Regulations (Regulations).  
The Plan includes a land use element and incorporates a land use map depicting where certain types of uses should be encouraged and permitted.  The land use element of the Plan also incorporates a matrix, delineating compatible uses which correspond to the legend of use types shown on the land use map.  The Zoning Ordinance established various zoning districts, including residential, business, rural, and special purpose districts.  The Land Regulations control the subdivision and development of land.  
 Trinity Evangelical Presbyterian Church, Inc. and R. Jerry Hewitt own the property at issue.[2]  These properties are located in Florence on Beltline Drive and Hoffmeyer Road, across the street from a high school and near a Sams Club.  The Plans land use map and matrix designate the properties for Business-Industrial uses, specifically including Big Box Retail.  Originally, the Trinity property was zoned rural and residential, and the Hewitt property was not zoned.  
On March 16, 2000, Trinity submitted an application to amend the zoning of its property to general business.  On March 20, 2000, the Planning Commission posted signs on the Trinity property that advertised a public hearing on the proposed rezoning.  The Planning Commission also advertised the public hearing in a local weekly newspaper, the News Journal, on March 22, 2000.  On April 11, 2000, the Planning Commission held the public hearing.  The Florence City Council approved the rezoning request on June 12, 2000.  
On April 26, 2001, Hewitt submitted an application to the Planning Commission to annex his property to the City and to zone his property general business.  Notice of a public hearing appeared in the News Journal on May 2, 2001.  On May 3, 2001, the Planning Commission posted signs on the Hewitt property advertising the public hearing.  On May 22, 2001, the Planning Commission held the public hearing.  The Florence City Council approved the annexation and zoning of the Hewitt property on July 9, 2001.  
For purposes of this appeal, the ultimate zoning determination of the subject properties for commercial use was wholly consistent with the projected use as contemplated by the Plan.
Wal-Mart currently has an option to purchase the Trinity and Hewitt properties.  Wal-Mart intends to develop the property and construct a SuperCenter and shopping complex.  On July 22, 2003, Wal-Mart submitted a conceptual site plan to the Planning Commission.  
The members of RED own residential property in the Lakewood Subdivision near or adjacent to the proposed Wal-Mart development.  RED responded to Wal-Marts application with concerns about its effect on the Lakewood Subdivision.  In response to REDs concerns, Wal-Mart made several modifications to its conceptual site plan.  On October 29, 2003, after a series of correspondence between and among Wal-Mart, Wal-Marts engineers, the Planning Commission, and RED, the Planning Commission held a work session open to the public to discuss the major issues associated with the Wal-Mart development.  RED made a presentation at this work session.  On November 25, 2003, the Planning Commission approved Wal-Marts final site plan by a 7-2 vote.  
On December 23, 2003, RED filed a petition for judicial review of the decision of the Planning Commission and sought a declaratory order that the actions of the Planning Commission violated the substantive and procedural rights of its members.  On November 2, 2004, the circuit court issued an order dismissing the appeal and the petition for judicial review.  This appeal followed.
STANDARD OF REVIEW
 In the context of zoning, a decision of a reviewing body . . . will not be disturbed if there is evidence in the record to support its decision.  Rest. Row Assocs. v. Horry County, 335 S.C. 209, 215, 516 S.E.2d 442, 446 (1999); Peterson Outdoor Adver. v. City of Myrtle Beach, 327 S.C. 230, 235, 489 S.E.2d 630, 632 (1997).  A court will refrain from substituting its judgment for that of the reviewing body, even if it disagrees with the decision.  Rest. Row Assocs., 335 S.C. at 216, 516 S.E.2d at 446; Peterson, 327 S.C. at 235, 489 S.E.2d at 632.  Zoning is a legislative function, and this court will refrain from second guessing a zoning authoritys decision if the decision is fairly debatable.  Petersen v. City of Clemson, 312 S.C. 162, 172, 439 S.E.2d 317, 323 (Ct. App. 1993).  However, a decision of a municipal zoning board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion.  Rest. Row Assocs., 335 S.C. at 216, 516 S.E.2d at 446; Peterson, 327 S.C. at 235, 489 S.E.2d at 633.  This court is not permitted to disturb any of the circuit courts findings of fact if there is any evidence to support them.  Petersen, 312 S.C at 169, 439 S.E.2d at 322 (Ct. App. 1993) (citing Bishop v. Hightower, 292 S.C. 358, 356 S.E.2d 420 (Ct. App. 1987).
LAW/ANALYSIS
RED argues the circuit court erred in upholding the Planning Commissions decision to approve the Wal-Mart SuperCenter because: (1) the zoning of the Trinity and Hewitt properties was illegally accomplished; and (2) the Zoning Ordinance and Regulations do not comply with the Act or the Comprehensive Plan.  We disagree.
The circuit court found REDs challenges were barred as filed outside the applicable statute of limitations.  We find no error in this determination.  South Carolina Code Ann. Section 6-29-760(D) (2004) precludes any challenge to the adequacy of notice or validity of a zoning regulation or map, or amendment to it sixty days after the decision of the governing body, if there has been substantial compliance with the notice requirements of the Act or with locally established procedures.  REDs challenges came more than two years after the properties were rezoned.  Thus, RED had the burden of showing that the Planning Commission failed to substantially comply with the notice requirements of the Act or the Zoning Ordinance.  We find, as the circuit court did, that substantial compliance was met.
I.  Substantial Compliance with Notice Requirements
1.  Newspaper of General Circulation
Both section 9.5 of the Zoning Ordinance and South Carolina Code Ann. Section 6-29-760(A) (2004) provide that, prior to rezoning property, the Planning Commission must hold a public hearing and advertise the time and place of the hearing in a newspaper of general circulation.  In the present case, the notice of the zoning applications was published in the News Journal, a free publication that has a circulation of 25,000.  RED contends the News Journal does not meet the newspaper of general circulation requirement because notice may have been more effective if run in a paper with a larger circulation and with paid subscribers.    
We agree with the circuit courts finding that the News Journal is a newspaper of general circulation as required by the Act and the Zoning Ordinance.  For a publication to be considered a newspaper of general circulation, it must contain items of general interest to the public.  58 Am. Jur. 2d Newspapers, Periodicals, and Press Associations § 37 (2005).  RED makes no contention the News Journal does not contain items of general interest to the public.  Further, neither the Zoning Ordinance nor the Act require publication in the largest newspaper or in a paper with paid subscribers.  
2.  Signage
South Carolina Code Ann. Section 6-29-760(A) (2004) requires that the affected property be posted with conspicuous notice visible from each right of way upon which the property abuts.  Section 9.5 of the Zoning Ordinance is analogous to section 6-29-760(A) with the added requirement that one notice is to be posted for every 200 feet of road frontage, advising of the nature of the change, and the time, date, and place of the hearing.  In this case, the signage posted on the two properties contained a large Z, stated ZONING CHANGE PROPOSED, and included a telephone number that members of the public could use to request more information.[3]  While exacting compliance with the Zoning Ordinance was lacking here, we concur with the circuit court in finding that substantial compliance was demonstrated.  
South Carolina case law does not specifically define substantial compliance in the context of S.C. Code Ann. Section 6-29-760(D) (2004).  However, American jurisprudence generally holds substantial compliance is met if the purpose of the statute is achieved.  See James v. County of Kitsap, 115 P.3d 286, 293 (Wash. 2005) (substantial compliance means a court should determine whether a statute has been followed sufficiently so as to carry out the intent for which the statute was adopted); Iowa State Bank & Trust Co. v. Michel, 683 N.W.2d 95, 105 (Iowa 2004) (in deciding whether a party has substantially complied with a statutory requirement, the court evaluates whether the asserted compliance assures that the reasonable objectives of the statute will be met); Rosenblatt v. City of Houston, 31 S.W.3d 399, 404 (Tex. Ct. App. 2000) (Substantial compliance has been defined to mean performance of the essential requirements of a statute.); Morrow v. Bobbit, 943 S.W.2d 384, 389 (Tenn. Ct. App. 1996) (substantial compliance is met when it is reasonable to conclude that the objective sought by the statute has been fully attained); Thrash v. City of Asheville, 393 S.E.2d 842, 845 (N.C. 1990) (Substantial compliance means compliance with the essential requirements of the statute.); Sabatini v. Jayhawk Const. Co., Inc., 520 P.2d 1230, 1234 (Kan. 1974) (Substantial compliance requires compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.); Brow v. Sherwin-Williams Co., 109 N.E.2d 864, 866-67 (Ohio 1952) (the requirements of a procedural statute are met when the municipality substantially complies with the statutes procedural mandates, which requires the municipality to act in a way to achieve the purpose of the statute).  
The decisions in South Carolina are in full accord with the above cited cases.  See, e.g., Quality Towing, Inc. v. City of Myrtle Beach, 345 S.C. 156, 164-65, 547 S.E.2d 862, 866 (2001) (looking to the clear language and express purpose of a federal act to determine whether substantial compliance occurred); Davis v. NationsCredit Fin. Servs. Corp., 326 S.C. 83, 86, 484 S.E.2d 471, 472 (1997) (looking to the purpose of a statute in determining whether substantial compliance occurred).  
In the present case, the objectives sought to be achieved by the notice requirements were, in fact, met.  The purpose of the posting requirement is to put interested parties on notice of a public hearing.  The record reveals that an official of the high school across the street knew to inquire further about the Trinity zoning change because a representative was present at the public hearing.  Additionally, as to the Hewitt zoning, a number of telephone calls were received from members of the public, inquiring about the change.  Accordingly, there is evidence to support the circuit courts determination that the technical noncompliance of the signage does not defeat a finding of substantial compliance.  See Morrow, 943 S.W.2d at 389 (Tenn. Ct. App. 1996).
3.  Notice to Adjacent Landowners
Finally, RED contends the Planning Commission did not provide notice to adjoining landowners, as required by the Act and the Zoning Ordinance.  We, however, join the circuit court in finding that REDs argument has no basis in law.  Neither the Act nor the Zoning Ordinance requires individual, written notice of the zoning application.  In any event, RED cannot overcome the fact of substantial compliance.
II.     Consideration of Surrounding Land Uses
RED contends the Planning Commission failed to consider the current use of land surrounding the Trinity property during its rezoning and the Hewitt property during its annexation and zoning.  As noted above, we find that this argument is barred as filed outside the applicable statute of limitations, South Carolina Code Ann. Section 6-29-760(D) (2004).  Regardless, we agree with the circuit courts conclusion that this argument fails on the merits.  
The record reveals surrounding uses were identified with respect to the zoning of both the Trinity and Hewitt properties.  The graphics and pictures attached to the staff reports show the uses abutting the Trinity and Hewitt properties, geographically and by legend, to include subdivision use.  The Planning Commission, therefore, did consider the use of the land surrounding the Trinity and Hewitt properties.  The fact that this consideration did not culminate in the result sought by RED does not advance its position on appeal. 
III.  Alleged Failure to Comply with the Act and the Comprehensive Plan in Zonings
RED contends the rezoning of the Trinity property and annexation and zoning of the Hewitt property must be set aside for failing to comply with the Act and the Plan.  Again, we find this argument barred under South Carolina Code Ann. Section 6-29-760(D) (2004).  However, this argument also fails on the merits.
The circuit court found that the Zoning Ordinance, Regulations, and Plan are all consistent.  We agree.  As noted above, the land use map and matrix incorporated by the Plan designate the Hewitt property and Trinity property for Business-Industrial uses, including Big Box Retail.  The zoning of these properties is B-3, general business.  The ultimate zoning determinationfor commercial usetracks the Plans projected use for these properties.  Because there is consistency between the Plan and the subsequent zoning, we need not address any phantom dispute or conflict between the Plan and the Zoning Ordinance.  REDs argument is without merit.    
Finally, in view of this courts deferential standard of review and the fact that we find the Planning Commissions decision at least fairly debatable, we refrain from second guessing its decision.  See Petersen, 312 S.C. at 165, 439 S.E.2d at 320.
IV.  Alleged Failure to Consider and Apply the Comprehensive Plan to the Wal-Mart Project
RED contends the Planning Commission failed to consider and apply the Plan in approving the Wal-Mart project.  We disagree.  
First, we find that the Plan is consistent with the Wal-Mart project.  As discussed above, the Plan originally designated the property on which the SuperCenter will be built as appropriate for Business-Industrial use.  The SuperCenter fits that described use.  Second, the circuit court found no evidence that the Planning Commission acted arbitrarily or capriciously in approving the Wal-Mart project.  The record reveals this to be true as it provides the Wal-Mart project was granted only after thorough study, and after modifications were made by Wal-Mart in response to input by staff, the public, and members of RED.  
CONCLUSION
We join the circuit court in finding that the Planning Commission substantially complied with the notice requirements of the Act and Zoning Ordinance in rezoning the Trinity property and annexing and zoning the Hewitt property.  Therefore, REDs challenge to this decision is procedurally barred pursuant to section 6-29-760(D) of the South Carolina Code (2004).  In addition, we concur in the finding that the Planning Commission did not act arbitrarily, capriciously, or in abuse of its discretion in approving Wal-Marts application.  The circuit court order dismissing REDs petition for judicial review is
AFFIRMED.
HEARN, C.J., STILWELL, and KITTREDGE, JJ. concur.

[1]  S.C. Code Ann. § 6-29-310, et seq.
[2]  Trinity and Hewitt own separate parcels of the property at issue.  The parcels owned by Hewitt are titled in either R. Jerry Hewitt individually or in Hewitt Land Company, Inc., an entity owned by R. Jerry Hewitt.  
[3]  The Planning Commission uses the same signs for every zoning change and has done so for a number of years.