17249

DANIEL R. STEVENSON *et al.,* Appellants, v. BOARD OF ADJUSTMENT OF THE CITY OF CHARLESTON, and THE FIRST BAPTIST CHURCH OF CHARLESTON, Respondents

(96 S. E. (2d) 456)

*Messrs. S. Henry Edmunds, Barnwell & Whaley* and *Sinkler, Gibbs & Simons,* all of Charleston, *for Appellants,*

*Messrs. Stoney & Crosland* and *J. C. Hare,* of Charleston, *for Respondent, The First Baptist Church of Charleston,*

*Messrs. Stoney & Crosland* and *J. C. Hare,* of Charleston, *for Respondent, the First Baptist Church of Charleston, in Reply to Appellant's Brief.*

January 17, 1957.

Moss, Justice.

The congregation of The First Baptist Church of Charleston was organized in the year 1683. The church is located on land acquired in 1699. The church building is on Church Street, situate between Tradd and Water Streets. It is said that the church building was designed by Robert Mills, famous early American architect, who designed many other buildings in South Carolina. The neighborhood, in which the church is located, is thoughtfully and beautifully described by Judge Henderson, Trial Judge, in the following language:

"The district known as Old and Historic Charleston is a residential area of great charm and beauty, of lovely walled gardens, artistic gateways, and stately old houses with wide verandas facing toward the sea. Many of the houses go back to colonial and Revolutionary days, and some have been occupied by the same families for many generations. On both sides of the church are residences which were built before the Revolution. Throughout the district there are buildings which call to mind the times of the colonial governors, of the signers of the Declaration, of Revolutionary patriots, or statesmen and soldiers of the early days of the state and of the republic. This section of the city may well be said to be the cradle of history of our state. Visitors from all parts of the nation come to see and admire the old buildings and to view the points of historic interest."

The church is located in an "A" Residence District, which said district is designated as "Old and Historic Charleston". The First Baptist Church had been in existence long prior to the enactment of the Zoning Ordinance of the City of Charleston.

The Zoning Ordinance of the City of Charleston was adopted on October 19, 1931, pursuant to the statutory law of South Carolina, which is now codified as Sections 47-1001 to 47-1017, inclusive, 1952 Code of Laws of South

Carolina. Authority is given to the legislative bodies of cities and incorporated towns, for the purpose of promoting health, safety, morals or the general welfare of the community, to regulate and restrict the height, number of stories and size of buildings and other structures; the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population and the location and use of buildings, structures, and land for trade, industry, residence or other purposes; and to this end the said cities or incorporated towns may divide the municipality into districts of such number, shape and area, as may be deemed best suited to effectuate the purpose of the zoning statute. The statute requires regulations to be made by the Zoning Ordinance in accordance with a comprehensive plan, designed to lessen congestion in the streets, secure safety from fire, panic and other dangers, to promote health and the general welfare, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population and to facilitate the adequate provisions for transportation, water, sewerage, schools, parks and other public requirements.

The Charleston Zoning Ordinance, Article II, Section 6, provides:

"In an 'A' Residence District, land may be used and buildings or structures may be erected, altered or used, only for the following:

"2. Church or other place of worship.

"3. School * * *:"

It is also provided in Article V, Section 19, under "Height and Area Regulations" that

"In any District, the maximum heights of buildings or structures, the minimum dimensions of yards, courts and other open spaces, the area of lot required per family housed thereon and the percent of lot to be occupied by buildings shall be as shown on the schedule of 'Height and Area Regulations' accompanying this ordinance and hereby declared to be a part hereof."

By referring to the "Schedule of Heights and Area Regulations", it is to be seen that the principal buildings shall not occupy more than thirty-five per cent of the area of the lot upon which they are situated.

The Charleston Zoning Ordinance, under the "Schedule of Height and Area Regulations", provides:

"The total width of side yard space shall be at least 15 feet and a side yard at least 9 feet in width shall be provided adjacent to the side line of the lot which is most southerly or westerly."

It is also provided under said Zoning Ordinance, Article VIII, Section 34:

"In any residence district, principal buildings shall not occupy more than fifty (50%) per cent of the area of such lot upon which they are located."

Section 47-1007 of the 1952 Code of Laws of South Carolina, and Article XI of the Zoning Ordinance of the City of Charleston, provide for the appointment of a Board of Adjustment, and such Board has the power, in appropriate cases and subject to appropriate conditions and safeguards, to vary or make special exceptions to the terms of the Zoning Ordinance, in harmony with its general purpose and intent.

The evidence in the record shows that on January 10, 1947 and on January 18, 1951 the Board of Adjustment approved applications of the First Baptist Church of Charleston for occupancy of more than 35% of said area of the lot. The church, by such approval, was permitted to use 46.8% of said lot. This variance was granted in accordance with the authority given to the Board of Adjustment and there was no appeal by the nearby property owners, or others, from these decisions of the Board.

On May 27, 1954, The First Baptist Church of Charleston, the respondent herein, applied to the Administrative Officer under the Zoning Ordinance of the City of Charles-

ton, for a permit to construct a three story masonry addition to the rear of its Sunday School building and to add a third floor to the present educational building, the new addition to be occupied by the Sunday School. This application was referred to the Board of Adjustment for action. During the hearing before the Board the application was amended by adding to the application a proviso that the buildings were to be occupied also as a day school and to use the premises for such. The granting of the application was protested and resisted by a number of residents of Charleston, most of whom were owners of real estate in the immediate area.

The record also shows that extensive hearings were held by the Board of Adjustment. The Board issued its order granting The First Baptist Church a building and occupancy permit, upon compliance with numerous specific conditions, one of which was that the maximum number of day students permitted to occupy the premises should not exceed 'Two Hundred Seventy (270) in number, this limitation being based upon the absence of any recreational ground on the premises, congestion of the grounds with existing buildings and the new proposed building, as well as the tombstones in the adjoining graveyard, and in order to lessen congestion in the streets; it being found from the uncontradicted testimony that during the passage of the children from the day school on the church premises to the city playground, and their return therefrom, as well as during the period when the school is opened and closed, a serious traffic jam is created, increasing the hazard of fire and the general safety and welfare of those residents immediately adjacent to the premises in question.

Both the church and the property owners appealed the decision of the Board of Adjustment. The appeal of the church related only to the condition imposed by the Board of Adjustment limiting the use of the building to two hundred seventy (270) day students. The appeal of the property owners contended that the decision of the Board of Adjust-

ment was invalid because it resulted in allowing the occupancy of the lot to an extent greater than is permitted by the Zoning Ordinance, and that the Board of Adjustment was not authorized to grant the permit. They likewise contend that even if it lay within the discretionary power of the Board of Adjustment to grant the permit, its action constituted an abuse of discretion. Upon proper petition by the respective parties, the court below granted a Writ of Certiorari pursuant to the provisions of Section 47-1014, 1952 Code of Laws of South Carolina.

The objections of both parties were heard by the court below and the trial Judge, by an Order dated January 13, 1956, upheld the action of the Board of Adjustment in granting the building and occupancy permit applied for by the church, but struck out the condition which limited the occupancy of the educational building to two hundred seventy (270) day students.

The questions presented on this appeal are (1) Should, under the facts and circumstances of this case, The First Baptist Church of Charleston be permitted to extend its Sunday School plant to an extent beyond that permitted by the Zoning Ordinance of the City of Charleston? (2) Is the decision below granting permission to The First Baptist Church of Charleston to operate a day school in its Sunday School plant to be upheld?

In the recent case of *Talbot v. Myrtle Beach Board of Adjustment,* 222 S. C. 165, 72 S. E. (2d) 66, this court discussed the history and principles of zoning. A Zoning Ordinance dividing a city into districts or zones is constitutional. *Momeier v. John McAlister, Inc.,* 203 S. C. 353, 27 S. E. (2d) 504.

The appellants here attack the decision of the Board of Adjustment in granting a variance. In the case of *Hodge v. Pollock,* 223 S. C. 342, 75 S. E. (2d) 752, 754, this court had occasion to discuss the granting of a variance from a Zoning Ordinance and clearly set forth the rule with regard to variances. The court made the following pronouncement:

"The office of the variance is to permit modification of an otherwise legitimate restriction in the exceptional case where, due to unusual conditions, it becomes more burdensome than was intended, and may be modified without impairment of the public purpose. *St. Onge v. City of Concord,* 95 N. H. 306, 63 A. (2d) 221. The courts have never undertaken to formulate an all-inclusive definition of 'unnecessary hardship'. Although it has been stated that the phrase should be given a reasonable construction, it is recognized that it does not lend itself to precise definitions automatically resolving every case.' 58 Am. Jur., Zoning, Section 203. It is generally held that before a variance can be allowed on the ground of 'unnecessary hardship', there must at least be proof that a particular property suffers a singular disadvantage through the operation of a zoning regulation. *Hickox v. Griffin,* 298 N. Y. 365, 83 N. E. (2d) 836.

"A board of adjustment is vested with a wide discretion in determining whether a variance should be granted in a particular case on the ground of unnecessary hardship. Its decision should be given great weight and the discretion vested in such board should not be interfered with unless arbitrary or clearly erroneous. *Talbot v. Myrtle Beach Board of Adjustment, supra,* 222 S. C. 165, 72 S. E. (2d) 66. 'However, the decision of the zoning board will not be upheld where it is based on errors of law, or fraud, or where there is no legal evidence to support it, or where the board acts arbitrarily or unreasonably, or in a discriminatory manner or where, in general, the board has abused its discretion.' 58 Am. Jur., Zoning, Section 231. In exercising its discretion, the board of adjustment is not left free to make any determination whatever that appeals to its sense of justice. It must abide by and comply with the standard prescribed by the local ordinance and zoning statutes. *Lee v. Board of Adjustment,* 226 N. C. 107, 37 S. E. (2d) 128, 168 A. L. R. 1. In *Devaney v. Board of Zoning Appeals,* 132 Conn. 537, 45 A. (2d) 828, 829, the Court said:

" 'To attempt to give to any small group of individuals such as a zoning commission or appeal board the power to

determine in the exercise of its unrestricted discretion what uses might be made of the properties in a community would not only be contrary to sound social policy but clearly unconstitutional. *State v. Stoddard,* 126 Conn. 623, 628, 13 A. (2d) 586. As, however, there may be situations where a literal enforcement of the provisions might result in serious injustice to a particular individual, it is usual to vest in the zoning commission or appeal board power to vary the regulations where there would otherwise be unnecessary hardships or practical difficulties. *Lathrop v. Town of Norwich,* 111 Conn. 616, 620, 151 A. 183; *St. Patrick's Church Corporation v. Daniels,* 113 Conn. 132, 139, 154 A. 343. This is an exceptional power which should be sparingly exercised and can be validly used only where a situation falls · fully within the specified conditions'."

The question to be answered is whether the facts of this case are sufficient to justify the decision of the Board of Adjustment in granting a variance. In order to answer this question we must briefly review the evidence.

In 1940 the Reverend John A. Hamrick became the pastor of The First Baptist Church of Charleston and at that time the church membership was approximately two hundred. By 1954 the congregation had reached a resident membership of nine hundred and a total membership of approximately thirteen hundred. It is implicit in the testimony that it became necessary, in order to accommodate the growth of the church, that an enlargement of the physical plant be made. It was testified that in 1954 every crevice and cranny of the building was used for Sunday School. The average Sunday School attendance was approximately six hundred for 1953. The evidence further shows that the additional physical plant was needed because of the growth and expansion of the church and its Sunday School. It was also testified that the proposed new construction would be used for the purpose of providing adequate space for the existing membership of the Sunday School. The congregation of the church adopted a Resolution, which was offered in evidence,

and the second paragraph thereof is as follows: "The present enrollment of the First Baptist Church Sunday School is 950. There is a need for accommodations for the existing Sunday School which made it necessary for the church to apply for a building permit for the erection of a proposed addition to the educational building, in order to accommodate the Sunday School." The evidence also shows in detail the proposed plans and specifications for the addition to the existing church building.

We conclude that the Board of Adjustment, upon the evidence adduced at the several hearings, was justified in granting a variance and allowing the permit for the building and occupancy of the addition applied for by the said church. Under the evidence it appears that unnecessary hardship would be inflicted upon the church by the operation of the zoning regulation. The Board having discretion in determining whether the variance should be granted has properly exercised such. We cannot say from the record before us that there has been any abuse of the Board's authority or discretion. A literal enforcement of the provisions of the zoning ordinance against the church would cause it to suffer a singular disadvantage.

Attention is also directed to the finding made by the trial Judge that the occupancy will come just under 50%. Therefore, there is no violation of Article III, Section 34 of the Zoning Ordinance.

The appellants assert that the court below disregarded graves, gravestones and similar monuments in determining lot occupancy. They assert that the court should have considered such in determining whether the lot occupancy exceeded 50% thereof.

We recur again to "Schedule of Heights and Area Regulations" where it is provided that "principal buildings" shall not occupy more than 35% of the area of the lot upon which they are situated. In Article VIII, Section 34, the catch-all provision of the Zoning Ordinance provides "principal build-

ings" shall not occupy more than 50% of the area of such lot upon which they are located.

The court below, in order to consider graves, gravestones and similar monuments in determining the percentage of lot occupancy, would have had to construe such as "buildings". We cannot agree with the contention of the appellants.

In the case of *Leaphart v. Harmon,* 186 S. C. 362, 195 S. E. 628, 629, this court adopted definitions that are here applicable. The court said:

"In The Century Dictionary and Cyclopedia appear the following definitions:

" 'Grave:—An excavation in the earth, now especially one in which a dead body is or is to be buried; a place for the interment of a corpse; hence, a tomb; a sepulcher.'

" 'Tomb:—An excavation in earth or rock, intended to receive the dead body of a human being;—a grave.'

" 'Monument:—Anything by which the memory of a person, a period, or an event is preserved or perpetuated.'

" 'Burial Place:—A portion of ground set apart for or occupied by a grave or graves;—a grave or a graveyard'."

In the case of *Brown v. Sikes,* 188 S. C. 288, 198 S. E. 854, 856, this court said:

"The word 'building' is defined by Webster as, 'That which is built; a fabric framed and designed to stand more or less permanently'."

In 9 Am. Jur., Buildings, paragraph 2, at page 198, it is said:

"A 'building' in the usual and ordinary acceptation of the word is a structure designed and suitable for habitation or sheltering human beings and animals, sheltering or storing property, or for use and occupation for trade or manufacture."

In the case of *Society of Cincinnati's Appeal,* 154 Pa. 621, 26 A. 647, 20 L. R. A. 323, it was held that a monument consisting of a statue upon a pedestal is not a building within

the meaning of a statute prohibiting the erection of buildings on a public square.

In the case of *Field v. Gregory,* S. C., 94 S. E. (2d) 15, 20, this court said:

"In the case of *Wragge v. South Carolina & G. Railroad Co.,* 47 S. C. 105, 25 S. E. 76, 83, 33 L. R. A. 191, this Court said:

" 'One of the primary rules in the construction of a statute is that the words used therein should be taken in their ordinary and popular signification, unless there is something in the statute requiring a different interpretation. Cooley Const. Lim. 58, 59; Potter, Dwar. St. 127, 622. This is really nothing more than a rule of common sense, for it must be supposed that the legislature, in enacting a statute, intended that the words used therein should be understood in the sense in which they are ordinarily and popularly understood by the people, for whose guidance and government the law was enacted, unless there is something in the statute showing that the words in question were used in some other sense'."

It is thus apparent that the appellant's contention cannot be sustained. We construe the word "buildings" in its ordinary and popular signification. There is nothing in the Zoning Ordinance requiring a different interpretation.

We come now to the question of whether or not there was error in granting permission to The First Baptist Church to operate a day school in its Sunday School plant.

The Zoning Ordinance of the City of Charleston permits day schools in an "A" Residence District and in the district known as "Old and Historic Charleston." The evidence shows that just across Church Street is a Kindergarten, around the corner on Elliott Street is the Charleston Day School and some two or three blocks away, at East Bay and Tradd Streets, is the Gaud School, all in the same district.

It is required, pursuant to Article IX, Section 39, of the Zoning Ordinance of the City of Charleston, that a certificate of occupancy either for the whole or a part of a new building, or for alteration of an existing building, shall be applied for coincident with the application for a building permit. It is true that The First Baptist Church has operated a day school in its Sunday School building without the benefit of a certificate of occupancy. At the hearing in this case before the Board of Adjustment the application was amended so as to include the use of the buildings as a day school.

The Board of Adjustment granted a building and occupancy permit upon compliance with twenty-seven specific conditions. These conditions need not here be repeated. It is sufficient to say that many of them had to do with conforming the buildings of The First Baptist Church to a comprehensive plan that would secure safety from fire, panic and other dangers and promote the general welfare in accordance with the Zoning Ordinance. One of the specific conditions of the variance or grant was:

"27. Because of the absence of any recreational ground on the premises, congestion of the grounds with existing buildings and the new proposed building, as well as tombstones and all of the other facts adduced in testimony in the aforementioned hearing, it is directed that the maximum number of day students permitted to occupy the premises not exceed two hundred seventy (270)."

The record shows that in order to comply with the various conditions and limitations placed upon the operation of the day school, incidentally such was also beneficial to the operation of the Church and the Sunday School, The First Baptist Church will expend approximately Ninety Thousand ($90,000.00) Dollars.

Since the Zoning Ordinance itself permits the operation of a day school within the zoned district if compliance is had with the conditions and limitations im-

posed by the Board in order to secure safety from fire, panic and other dangers, the Board could not deny the right which the Zoning Ordinance permitted. In granting the certificate of occupancy for the use of said building as a day school, the Board of Adjustment acted in conformity with the Zoning Ordinance. We, therefore, uphold the Board of Adjustment in granting permission to The First Baptist Church of Charleston to operate a day school.

As is above stated, the Board of Adjustment limited the use of the building of The First Baptist Church as a day school to two hundred seventy (270) students. The trial Judge struck out the condition which so limited the occupancy of the building to two hundred seventy (270) students. The question for determination is whether or not the Board of Adjustment had a right to limit the number of day students.

It is provided in Section 47-1007 of the 1952 Code of Laws of South Carolina, and under Article XI, Section 51(e) of the Zoning Ordinance of the City of Charleston, that in granting variances the Board, if it deem proper to the carrying out of the purpose and intent of the ordinance, may impose such reasonable and additional stipulations and conditions as will in its judgment better fulfill the purposes of the ordinance. When the Board imposed as a condition a limitation of occupancy of the building by two hundred seventy (270) day students, it did so upon the grounds and for the reasons stated in its Order above quoted. We think this condition was reasonable.

In 58 Am. Jur., Zoning, paragraph 214, at page 1056, an appropriate statement of the rule is as follows:

"The right of a zoning board of appeals, review, or adjustment to impose reasonable conditions upon granting an exception to, or variation of the application of, a zoning restriction to a particular piece of property, is generally upheld. Indeed, under a provision for the granting of variations or special exceptions subject to appropriate conditions and

safeguards, the failure of the zoning board to impose or prescribe such conditions or safeguards may invalidate the grant or render it voidable on review. Such conditions and safeguards must relate to the land itself and to the use thereof, and not to the person by whom such use is to be exercised."

It is undisputed in the record that with the existing buildings on the premises, that the remaining portion of the land of The First Baptist Church is completely taken up with graves or grave markers, with no ground space available on the premises for recreational purposes during the recess hours allowed the day students. The recreational facilities owned by the City of Charleston and designated for playground purposes are located some three blocks from the premises of the church. During the recess permitted each of the grades, the children are marched from the church property along a four foot cement walkway to the south of the church to Church Street, thence across Church Street and eastward through a passageway known as Longitude Lane for a city block, thence across East Bay Street, thence a short distance south upon said street to the playground located on the east side of East Bay Street adjacent to the Cooper River. The testimony indicates also that during the passage of the children from the church premises to the city playground, and their return, as well as during the period when the school is opened and closed, a serious traffic jam is created, increasing the hazards of fire and the general safety and welfare of those residents immediately adjacent to the premises. In view of these facts, we think the Board of Adjustment exercised a wise discretion in limiting the number of day students to two hundred seventy (270). Hence, we conclude that the court below was in error in striking down this reasonable condition.

The parties to this action were unable to agree upon what should constitute the transcript of record on appeal to this Court. Judge Henderson, pursuant to proper motion, ordered included in the printed record the appellants' Petition

for and the Writ of Certiorari, the Returns of The First Baptist Church and the Board of Adjustment, Petition and Notice of Appeal of The First Baptist Church and also its Petition for clarification of the decision of the Board of Adjustment. The appellants assert that Judge Henderson was in error in requiring the inclusion in the record of the foregoing papers.

The appellants, pursuant to Rule 4, Section 7 of the Supreme Court Rules, have appealed from the Order of the trial Judge settling the case. The reason assigned by the trial Judge for the inclusion of the foregoing papers in the record is stated by him as follows:

"In my opinion the five records should be printed. The petitions set forth the grounds of the appeals from the decision of the Board. Code, 47-1014. They, with the returns, make up the issues which were presented to the Circuit Judge. These records were essential to the proper consideration of the case in the Circuit Court, and I believe that the Supreme Court should have the benefit of having before it such matters as were necessarily before the Circuit Judge."

We agree with the Court below that the foregoing records were essential to the proper consideration of this case in this Court, and requiring the printing of such as a part of the record would not constitute error. Some latitude must be allowed the Circuit Judge in passing upon the contents of the appeal record.

The judgment of the Circuit Court is modified to the extent indicated and affirmed. The case is remanded for an appropriate Order of the lower Court consistent herewith.

STUKES, C. J., and TAYLOR and OXNER, JJ., concur.

LEGGE, J., not participating.