# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

John's Marine Service, Inc., Frances J. Ratliff, Edward J. Ratliff, Jr., James L. Ratliff, Lucretia B. Morgan, Sherri Akers Crisp, and Amy Cawthon, Appellants,

v.

Oconee County Board of Zoning Appeals, Ridgewater Engineering & Surveying, LLC, Globe, a South Carolina Limited Partnership, and Farmes, a South Carolina Limited Partnership, Respondents.

Appellate Case No. 2022-001796

———

Appeal From Oconee County
J. Cordell Maddox, Jr., Circuit Court Judge

———

Opinion No. 6101
Heard November 6, 2024 – Filed February 19, 2025

———

**AFFIRMED**

———

David Lee Paavola, of Kenison Dudley & Crawford, LLC, of Columbia, for Appellants.

Larry C. Brandt, of Larry C. Brandt, PA, of Walhalla, and Andrew Kent Holliday, of Derrick Ritter Williams & Morris, PA, of Seneca, both for Respondents Ridgewater Engineering & Surveying, LLC, Globe, a South Carolina Limited Partnership, and Farmes, a South Carolina Limited Partnership.

James W. Logan, Jr., of Logan & Jolly, LLP, of
Anderson, for Respondent Oconee County Board of
Zoning Appeals.

_____

**MCDONALD, J.:** This appeal challenges the circuit court's order affirming the Oconee County Board of Zoning Appeals' (BZA) granting of a right-of-way variance for the construction of a private road to access a proposed subdivision on Lake Keowee. Appellants argue the BZA: (1) lacked jurisdiction to determine the existence of a prescriptive easement, (2) erred in assuming Oconee County (the County) held a prescriptive easement, and (3) erred in expanding the purported easement. Appellants further contend the BZA's approval of the variance application was arbitrary and capricious. We affirm.

**Facts and Procedural History**

In 2008, Globes and Farmes, two South Carolina limited partnerships, purchased an undeveloped 15-acre tract on Lake Keowee at the end of a peninsula known as Arrowhead Point and agreed to develop a nineteen-home subdivision there.[1] Arrowhead Point has no street address; the closest addressed property is 599 Ellenburg Road, where John's Marine Service has operated for over forty years.[2] In 2020, other members of the Ratliff family, James Ratliff and Lucretia Morgan, purchased a neighboring property, 585 Ellenburg Road, from the descendants of T.B. Ellenburg. A plat prepared in connection with this conveyance shows Ellenburg Road is "subject to r/w public."

In October 2021, Ridgewater Engineering submitted a variance application on behalf of Andy Lee, the Arrowhead Point developer, requesting a variance of 18.1 feet from the County's 50-foot right-of-way requirement.[3] Lee needed the variance

_____

[1] Globes and Farmes purchased the property from Crescent Communities, a real estate development company created by Duke Energy.

[2] In 1982, Edward John Ratliff and Francis Ratliff bought the Ellenburg Road property and relocated their business from downtown Seneca.

[3] Section 26-2(c) of the Oconee County, S.C., Code of Ordinances establishes the requirements for private roads constructed to provide "vehicular access and road frontage to developments, or sections of developments, containing more than ten

to build a road accessing the peninsula because the existing road does not extend fully onto Arrowhead Point. The property line separating the John's Marine property from the Arrowhead Point property is the centerline of the existing roadway. The variance was necessary because at its narrowest point, Arrowhead Point is only 31.9 feet wide and thus cannot accommodate the 50-foot right-of-way the County generally requires. Ridgewater proposed shifting the existing road completely onto Arrowhead Point, leaving only a right-of-way upon the John's Marine property. According to Ridgewater, the variance would not be detrimental to the character of the district because surrounding areas include single-family residential lots, and compliance with other applicable ordinances and permitting requirements would remain necessary.

The BZA first discussed the variance application at its November 30, 2021 meeting. Leah Smith, from the Development Team at Lake Keowee Real Estate, spoke on behalf of the Arrowhead Point developer. Smith confirmed the majority of the road would allow the required fifty-foot right-of-way but the narrowest "pinch point" provided room for only a 31.9 foot right-of-way.

Attorney Rick McDuff spoke on behalf of John's Marine and the Ratliff family, who opposed the granting of a variance. McDuff expressed the family's concerns, noting a dispute remained as to whether the County had a prescriptive easement and addressing this question would require a judicial proceeding. McDuff claimed county maintenance of the road ended approximately four to five hundred feet to the west of the John's Marine property and the Ratliff family privately maintained the remainder of the road as a private driveway. McDuff argued moving the road onto the Arrowhead Point property would landlock the John's Marine property with no road access. He also expressed concerns about potential flooding and traffic.

Edward John "Jay" Ratliff, a son of John's Marine's founder and brother of current owner Jimmy Ratliff, also spoke on behalf of the family. Jay Ratliff claimed John's Marine had used the entirety of the road from 585 Ellenburg Road to the end for forty years and noted the Ratliff family maintained that portion of the road. Yet, he admitted old Route 1 predated Lake Keowee, and "the road went all the way across and it was a tar and gravel road." Jay then demonstrated on a map where the County's road maintenance ended and where along the edge of the

dwellings." One of these requirements is that such roads shall have "a minimum road right-of-way width of 50 feet[.]" Oconee County, S.C., Code of Ordinances § 26-2(c)(2).

shoreline the old road's tar and gravel remains visible under the water. Owner Jimmy echoed Jay's concern that allowing a 31.9 foot right-of-way on the narrowest portion of the approach to Arrowhead Point would prevent John's Marine from parking boats and maneuvering boats into its shop for service.

The BZA also took public comment, with most commenters expressing concerns about the affect the right-of-way might have on John's Marine and Jimmy's ability to conduct business. Citizens worried about Jimmy's ability to maneuver boats in and out of his shop and the water, particularly in light of the likely increase in traffic from cars and delivery trucks traveling to the proposed subdivision. The BZA acknowledged it had received several emails opposing the variance.

Larry Brandt, counsel for Ridgewater, explained that moving the road completely onto Arrowhead Point would result in John's Marine gaining additional access to its property (as the access point was currently beneath the roadway) and would allow ample space for maneuvering and parking boats. Lee further explained that a proposed cul-de-sac would provide emergency vehicles, delivery trucks, and cars with the necessary turnaround space. Lee, who has developed other subdivisions around Lake Keowee, noted many of the developments on the lake required a reduced right-of-way for road access.

Ultimately, the BZA voted to table the variance discussion so that planning staff could research the road ownership question and to allow the parties to continue their efforts to resolve the dispute.

On January 24, 2022, the BZA again discussed the variance request. County staff indicated there was no question as to ownership of the property beneath the road, but a question remained as to the traveling surface. Thus, the BZA voted to postpone consideration of the requested variance for no longer than six months to allow the parties to continue their efforts to reach a compromise.

On April 25, 2022, the BZA revisited the variance discussion. Counsel for the County explained he had received affidavits from Jan Ratliff and Lori Ellenburg Bright claiming the county's road maintenance historically ended before the John's Marine property, despite the County's assertion that it maintained the road to the end of the pavement. He noted the BZA had authority to both grant the variance—whether or not this was a state or county road—and to place conditions on any variance granted. He suggested the BZA craft an order addressing the variance but not expressing a direct opinion on the existence of any prescriptive easement. Members of the Board agreed the BZA lacked authority to determine whether an

easement existed. Counsel further explained that the road as it currently exists would need to go through the abandonment process before the developer could move the roadway.

Kyle Reid from Oconee County Roads and Bridges commented that there was no indication in county records that Ellenburg Road was ever abandoned or otherwise turned over to private property owners. He explained the right-of-way associated with a road allows the County to widen the road, raise or lower the surface, construct drainage and culverts, and install utilities. Reid noted the roadbed running through Arrowhead Point and into Lake Keowee supported the position that Ellenburg Road was an old state road that continued onto Arrowhead Point prior to the construction of the lake and that this roadbed was turned over to the County after the lake was filled.

By contrast, McDuff asserted no public record supported a finding that the questioned portion of the road was ever a state (or county) road. McDuff further argued the BZA lacked the ability to grant a variance expanding any purported prescriptive easement or changing its location. Members of the public reiterated their concerns expressed at the November 2021 meeting that the variance would be detrimental to John's Marine; they also opposed any potential increase in traffic.

Smith and Lee again spoke on behalf of the Arrowhead Point developers. Smith described the variance request and noted moving the road would give Jimmy Ratliff more room to maneuver boats on the John's Marine property outside the roadway. Lee explained John's Marine would regain a substantial amount of property if the road were moved and any alleged "gap" between John's Marine and the roadway would be deeded to the owners of the John's Marine property. Lee noted Jimmy was currently parking boats all along the road, including on some of the property owned by the Arrowhead Point developers.

After the close of public comment, the BZA discussed the variance request. Members of the BZA acknowledged that granting a variance would be only the first step toward the road's construction, as the developer would still need to comply with other ordinances and permitting requirements. The BZA agreed constructing the road through the narrowest point of the property would be safe, assuming it complied with all applicable ordinances and permitting conditions.

The BZA then discussed the impact on John's Marine. One board member commented that John's Marine had been using the road as part of its business for several years, so the granting of the variance would necessarily impact it. In

response, the BZA Chairman noted John's Marine would be gaining access to the portion of its property long-covered by the road surface.  Still, the BZA acknowledged this was an emotional issue, and it discussed the perceived safety concerns at length.  A traffic study would be required, and road upgrades would be necessary if the study found the road could not handle the potential traffic increase associated with the proposed development.  The Chairman explained he understood the public's concern about increased traffic but noted the proposed subdivision would have only nineteen lots, so this did not appear to be a true safety matter.  The Chairman further stated economic development and any potential increase in County tax revenues are not factors when the BZA considers a variance request.[4]  The BZA then unanimously approved the application for the variance.

The BZA mailed its written findings to the parties on May 11, 2022.  Finding all required conditions for a variance had been met, the BZA concluded: "Order approved subject to proper abandonment procedures, compliance with all ordinances and state law on acceptance into the County roadway system.  Developer grant/deed John's Marine property so that there is reasonable, unimpeded access to the new road."

Appellants timely appealed to circuit court.  Following a hearing, the circuit court affirmed the BZA's decision, finding the granting of the variance was supported by the evidence in the record.  The circuit court denied Appellants' subsequent Rule 59(e), SCRCP motion.

**Standard of Review**

"The appellate court gives 'great deference to the decisions of those charged with interpreting and applying local zoning ordinances.'"  *Arkay, LLC v. City of Charleston*, 418 S.C. 86, 91, 791 S.E.2d 305, 308 (Ct. App. 2016) (quoting *Gurganious v. City of Beaufort*, 317 S.C. 481, 487, 454 S.E.2d 912, 916 (Ct. App. 1995)).  "In reviewing a decision of a zoning board of appeals, this court applies the same standard of review as the circuit court." *Venture Eng'g for DT LLC v. Horry County Zoning Bd. of Appeals,* 433 S.C. 419, 426, 858 S.E.2d 638, 642 (Ct. App. 2021).  By statute, the circuit court must uphold a decision of the BZA unless there is no evidence to support it.  *See* S.C. Code Ann. § 6-29-840 (Supp. 2024) (providing "[t]he findings of fact by the board of appeals must be treated in the

---

[4] *See* S.C. Code Ann. § 6-29-800(A)(2)(d)(i) (Supp. 2024) ("The fact that property may be utilized more profitably, if a variance is granted, may not be considered grounds for a variance.").

same manner as a finding of fact by a jury" and "[i]n determining the questions presented by the appeal, the court must determine only whether the decision of the board is correct as a matter of law"). "However, a decision of a municipal zoning board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Austin v. Bd. of Zoning Appeals*, 362 S.C. 29, 33, 606 S.E.2d 209, 211 (Ct. App. 2004) (quoting *Rest. Row Assocs. v. Horry County*, 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999)).

**Analysis**

**I. Jurisdiction: The Alleged Prescriptive Easement**

Appellants argue the BZA lacked jurisdiction to decide a legal or factual dispute related to the existence of a prescriptive easement. Appellants further claim that in presuming such an easement exists, the Board improperly shifted the burden of proof to Appellants to object to the variance when the burden properly lies with the applicant—the developer—to establish the prerequisites for a variance. Finally, Appellants contend the BZA erred in expanding the purported easement.

We agree with the circuit court that the BZA acted within its jurisdiction in granting the variance. The BZA has the statutory power to "to hear and decide appeals for variance from the requirements of the zoning ordinance when strict application of the provisions of the ordinance would result in unnecessary hardship" and may grant a variance if the board "makes and explains in writing" the required statutory findings. S.C. Code Ann. § 6-29-800(A)(2) (Supp. 2024).

Although Appellants repeatedly argue the BZA lacked jurisdiction to determine the existence of a prescriptive easement, we note the BZA made no such determination. Here, the BZA reviewed the variance application—in accordance with the powers delegated by § 6-29-800(A)(2)—and addressed the applicable statutory factors. At least one board member expressly stated during the November meeting that the BZA would not express an opinion as to the existence of any alleged easement. And, the BZA's order recognizes the developers must satisfy other applicable requirements prior to moving the existing roadway or constructing a new portion of the road. As the BZA properly addressed only a variance from the County's right-of-way width requirement for the entrance to the proposed subdivision, we find Appellants' jurisdictional argument meritless.[5]

_____

[5] At oral argument, the parties acknowledged Appellants' filing of a related declaratory judgment action seeking to have the subject road deemed abandoned

## II.  Granting of the Variance

Appellants next argue the approval of the variance was arbitrary and capricious because the location of the proposed road was left undetermined.  We disagree.

"The exercise of police power under a municipal ordinance is subject to judicial correction only if the action is arbitrary and has no reasonable relation to a lawful purpose." *Town of Scranton v. Willoughby*, 306 S.C. 421, 422, 412 S.E.2d 424, 425 (1991) (per curiam).  "When deciding whether to grant a variance, a local board must be guided by standards which are specific in order to prevent the ordinance from being invalid and arbitrary." *Rest. Row Assocs.*, 335 S.C. at 214, 516 S.E.2d at 445.

Section 6-29-800(A)(2) provides the framework for a municipal board's consideration of a variance request:

> A variance may be granted in an individual case of unnecessary hardship if the board makes and explains in writing the following findings:

and closed.  In June 2024, the circuit court held a three-day bench trial and decided in favor of Oconee County and the developers.  The circuit court found:

> [T]here is no evidence that Oconee County has abandoned the road by clear and unequivocal acts showing a clear intent to abandon.  Accordingly, plaintiff's petition to have the road deemed abandoned and closed is denied.  Further, Ellenburg Road from its intersection of Knox Road to the border of [the developers'] property is a public road until such time as a party obtains a Court ordered closure of all or some portion of the same or in the event Oconee County, through some clear and unequivocal act, abandons the same.

Appellants' appealed this ruling as well, but their appeal was dismissed, without prejudice, due to certain motions pending before the circuit court.  We do not rely on the findings in this related matter in reaching our decision here.

(a) there are extraordinary and exceptional conditions pertaining to the particular piece of property;

(b) these conditions do not generally apply to other property in the vicinity;

(c) because of these conditions, the application of the ordinance to the particular piece of property would effectively prohibit or unreasonably restrict the utilization of the property; and

(d) the authorization of a variance will not be of substantial detriment to adjacent property or to the public good, and the character of the district will not be harmed by the granting of the variance.

"In order to grant a variance, the Board must make the factual determination that each of the four elements above favor granting the variance." *Rest. Row Assocs.*, 335 S.C. at 215, 516 S.E.2d at 445. "Variance applicants are not required to prove that without the variance there exists no feasible conforming use for the property in question in order to show unnecessary hardship. [Our supreme court] has upheld the granting of variances where there were feasible conforming uses of the property." *Id.* at 217, 516 S.E.2d at 446.

We find the BZA properly considered the statutory factors and its findings were not arbitrary, capricious, or a clear abuse of discretion. In its discussion, the BZA addressed all four conditions that an applicant must meet to receive a variance. The BZA then made findings as to each condition in its written order, and its findings are more than supported by the evidence.

First, the evidence establishes "there are extraordinary and exceptional conditions pertaining to the particular piece of property." *See* § 6-29-800(A)(2)(a). As shown by aerial photos, Arrowhead Point is uniquely shaped, and the small "pinch point" approaching the property becomes too narrow for the standard 50-foot right-of-way. The BZA's finding that "these conditions do not generally apply to other property in the vicinity" is also supported by the record. *See* § 6-29-800(A)(2)(b). While there may be other peninsula-shaped tracts along Lake Keowee, the Chairman noted those properties do not contain a "pinch point" where the land becomes too narrow to construct a road with the width generally required for such

a right-of-way.  Here, the "pinch point" neck of the property is surrounded by Lake Keowee and property owned by Duke Energy.

Next, there is evidence to support the BZA's finding that "because of these conditions, the application of the ordinance to the particular piece of property would effectively prohibit or unreasonably restrict the utilization of the property." *See* § 6-29-800(A)(2)(c).  The only way the developers could avoid the 50-foot right-of-way width requirement would be to reduce the number of proposed homes on the property to three lots.  *Compare* Oconee County, S.C., Code of Ordinances § 26-2(a) (providing no design standards apply to private driveways, which "shall serve no more than three residential dwellings") *with* § 26-2(b) (requiring private drives serving no more than ten lots or dwellings must "[h]ave a minimum road right-of-way of 50 feet, or an appropriately executed private roadway easement as defined by these regulations").  Thus, evidence supports the BZA's conclusion that reducing the number of lots to three would unreasonably restrict the utilization of this fifteen-acre property.

Finally, there is evidence in the record supporting the BZA's finding that "the authorization of a variance will not be of substantial detriment to adjacent property or to the public good, and the character of the district will [not] be harmed by granting of the variance." [6]  *See also* § 6-29-800(A)(2)(d).  Brandt's testimony—as well as the traffic study and safety discussions—provided the necessary evidentiary support for the BZA's finding as to this factor.  Although the Ratliff family and others voiced concerns about John's Marine's parking and maneuvering of boats, evidence in the record supports the BZA's finding that the true impact on the neighboring business would be minimal.  For these reasons, the circuit court properly affirmed the BZA's granting of the variance.

**Conclusion**

Accordingly, the order of the circuit court is

**AFFIRMED.**

**WILLIAMS, C.J., and TURNER, J., concur.**

---

[6] There is a scrivener's error in finding 4 of the BZA's written order; however, the transcripts of the discussion and vote confirm the BZA properly considered and voted on all four statutory factors in considering whether to grant the variance.