16955

Application of Dan H. Groves and E. V. Presson, to construct a restaurant on South Adgers Wharf

HAROLD W. SIMMONS, HENRY C. CHEVES, JR., HENRY C. CHEVES, III, GEORGE S. DEMERRELL, LAWRENCE W. BARRETT, ALMA BARRETT, MRS. ALEXANDER MARTIN, MRS. ELIZABETH McGOWAN and JOSEPH T. CLEMENT, Appellants, v. THE BOARD OF ADJUSTMENT OF CITY OF CHARLESTON, DAN H. GROVES, E. V. PRESSON and THE CHARLESTON LOBSTER HOUSE, INC., Respondents

(85 S. E. (2d) 708)

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Appellants,*

*Messrs. Frank H. Bailey* and *Charles J. Baker, Jr.,* of Charleston, *for Respondent, The Board of Adjustment for the City of Charleston,* and *Thos. P. Bussey,* of Charleston, *for the Respondents, Dan H. Groves, E. V. Presson, and The Charleston Lobster House, Inc.,*

February 2, 1955.

J. FRANK EATMON, Acting Associate Justice.

The City of Charleston has had in effect for a number of years a zoning ordinance enacted pursuant to the general statutory law of the State. Between East Bay and Concord Streets, south of Broad Street, there is a large area of the city zoned as a "B" residential district. To the east of Concord Street is the waterfront of Cooper River, there being between the street and the river a small strip of land also included in this residential district. This was typical waterfront property with wharves still being used by small commercial vessels but no longer useful for ocean going commerce.

After the area was zoned as residential, appellants purchased property therein which they now have converted into

residences. The immediate waterfront area was included in the extensive holdings acquired by the State Ports Authority from the City of Charleston, and the Authority has undertaken to lease to the respondent, Charleston Lobster House, Inc., a small parcel of land on the Cooper River waterfront near the foot of Tradd Street which is within the zoned residential district described. The respondents, Dan H. Groves and E. V. Presson, are officers of the Charleston Lobster House, Inc., and as such, propose to erect upon the leased site a public restaurant, which they describe as expensive, attractive and designed to improve and attract tourist trade.

Application for a building permit for the restaurant building was denied by the Zoning Administrative Officer because the zoning ordinance prohibits the erection of a restaurant in a "B" residential district. The applicants, respondents Groves and Presson, duly appealed to the Board of Adjustment and a hearing thereon was held December 1, 1952. The proposed construction was opposed by a number of residents of the area among whom were the appellants here.

Following such hearing, the Board of Adjustment authorized the construction of the proposed restaurant by granting a variance to the zoning ordinance. The action was based upon a finding by the Board that "the health, safety and general welfare of the community will be conserved and substantial justice done by the granting of the application before us, that the granting of the application will be in the public interest; and that a denial of the application will result in unnecessary hardship;" and "that the granting of such application conforms to the spirit of the Zoning Ordinance; * * *."

A petition for a Writ of Certiorari was duly filed by appellants and the cause was referred by the Circuit Judge to the Honorable T. B. Bryant of Orangeburg as Special Referee. Following the reference, the Special Referee filed his Report with findings of fact substantially in accordance with

those of the Board of Adjustment and recommending a Decree granting the variance sought. The case was heard by the Circuit Judge upon exceptions by appellants to the Report of the Special Referee. He affirmed the Report, concurring in the findings of the Referee. From such Order appellants have appealed to this Court.

Although appellants state several questions in their Brief as involved, the focal and controlling point of inquiry here is whether there is sufficient evidence in the record to support the factual findings by the Board of Adjustment that to refuse the variance to construct the proposed restaurant in a zoned residential district would result in unnecessary hardship upon the owner and/or the lessor of the specific property and that the granting of such variance conforms to the spirit of the ordinance and does substantial justice to all parties concerned. If these findings are based upon sufficient evidence, then the Board has acted within the authority delegated to it by the terms of Section 51(E), of the zoning ordinance of the City of Charleston and the statute authorizing it, to wit:

"Where by reason of topographical conditions, district border line situation, immediately adjoining existing developments or because of other unusual circumstances the strict application of any provision of this ordinance would result in exceptional practical difficulty or undue hardship upon the owner of any specific property, the board, in passing upon appeals, shall have the power to vary or modify such strict application or to interpret the meaning of this ordinance so as to relieve such difficulty or hardship; provided that such variance, modification, or interpretation shall remain in harmony with the general purpose and intent of this ordinance so that the health, safety, and general welfare of the community shall be conserved and substantial justice done."

In the comparatively recent case of *Hodge v. Pollock*, 223 S. C. 342, 75 S. E. (2d) 752, 754, this Court had occasion to discuss the office of a variance as the same relates to

zoning ordinances. Mr. Justice Oxner, writer of the unanimous opinion therein, said that "The office of the variance is to permit modification of an otherwise legitimate restriction in the exceptional case where, due to unusual conditions, it becomes more burdensome than was intended, and may be modified without impairment of the public purpose. *St. Onge v. City of Concord,* 95 N. H. 306, 63 A. (2d) 221. The courts have never undertaken to formulate an all-inclusive definition of 'unnecessary hardship'. 'Although it has been stated that the phrase should be given a reasonable construction, it is recognized that it does not lend itself to precise definitions automatically resolving every case.' 58 Am. Jur., Zoning, Section 203. It is generally held that before a variance can be allowed on the ground of 'unnecessary hardship', there must at least be proof that a particular property suffers a singular disadvantage through the operation of a zoning regulation. *Hickox v. Griffin,* 298 N. Y. 365, 83 N. E. (2d) 836."

We come now to consider the testimony involved in the case. The original designation of the area in question as residential by the zoning ordinance, or the reasonableness of that action by City Council has not been questioned. The property for the benefit of which the variance is sought, as well as the remaining property of the State Ports Authority similarly situated, was acquired after the passage of the zoning ordinance with its designation of this area as residential. Appellants acquired their property and improved the same as residences after the regulations were in effect and, as they testified, in reliance thereon. They further testified that to permit this restaurant to be erected and operated would greatly reduce the value of their residences and the lots on which they are situated; in fact, would make the ownership and occupancy of at least some of the residences undesirable. These considerations must of necessity be accorded due weight in considering any elements of hardship that might be found to exist with respect to respondents.

There is considerable testimony to the effect that the proposed restaurant to be located on the waterfront, specializing in sea food, and housed in an attractive and expensive building, would be helpful to attract more tourist trade to the City of Charleston. One of the respondents, Groves, testified that he and others interested in the tourist trade had actively surveyed the waterfront and had been unable to locate anything other than this particular site. Since he specified no other particular location surveyed and since one of the other witnesses for respondents, T. C. Read, testified to making such investigation without either identifying the sites inspected or in what respects the same were unfit or unsuitable for the project contemplated, it must be assumed that the witnesses meant that they had found no comparable location at the price involved here, because the Charleston waterfront is rather extensive. Any other site that Groves and Presson might yet obtain may not be considered quite as attractive as the location in question and it might be somewhat more costly, but these circumstances do not prove undue or unnecessary hardship. Furthermore, whether or not these respondents will suffer any loss of income or profit directly attributable to their inability to construct and operate the proposed project is purely speculative and may not be considered. Certainly they stand to lose nothing as the result of the lease agreement with the State Ports Authority for such contains a provision releasing Charleston Lobster House, Inc., from its terms should construction of the restaurant be not permitted. Thus, it clearly appears that lessees cannot be reasonably expected to sustain material financial loss if the variance is refused. But, going further and assuming that they will suffer substantially in a financial way, and this is obviously the only hardship that could possibly be expected to result to them, that alone is not sufficient. "Although it is an element in the situation which is entitled to fair and careful consideration, mere disadvantage in property value or income, or both, to a single owner of property, resulting from application of

zoning restrictions ordinarily does not warrant relaxation in his favor on the ground of practical difficulty or unnecessary hardship." 62 C. J. S., Municipal Corporations, § 227(11), p. 536. And in the case of *Lee v. Board of Adjustment,* 226 N. C. 107, 37 S. E. (2d) 128, 131, 168 A. L. R. 1, it is said that "The financial situation or pecuniary hardship of a single owner affords no adequate grounds for putting forth this extraordinary power affecting other property owners as well as the public."

As for any hardship that might be worked upon the State Ports Authority, it will be conceded that some pecuniary loss will result if the variance is denied. The lease entered into between the Authority and the Charleston Lobster House, Inc., provides for a rental of $50.00 per month and construction of a building by the lessee costing not less than $20,000.00, which would revert to the lessor at the end of 20 years. The present value of such lease to the Authority was testified to be approximately $11,500.00. It was also testified that this particular property could not be feasibly used for residential purposes. There is, however, no testimony to the effect that it cannot be continued in use for the same general purposes to which it is presently devoted, and is substantially the same use that has been made of the same since the area was zoned. As above mentioned, the Authority purchased this area after the zoning ordinance was in effect, and it must be assumed that any hardship, financial or otherwise, resulting from existing conditions were contemplated at the time of the purchase, and the owner should not now be relieved therefrom to the impairment of rights of others who also purchased in reliance on the ordinance and have made large expenditures of capital on the strength of the assurances therein.

Proof is totally lacking to show that granting of the variance will conform to the spirit of the ordinance. A restaurant, regardless of the type, is properly excluded from a residential zone and can present features objectionable to

neighboring residents. *Talbot v. Myrtle Beach Board of Adjustment,* 222 S. C. 165, 72 S. E. (2d) 66. So far as the record reflects, the particular property involved here is no different now in character or otherwise than it was at the time the ordinance was passed. Again, we mention that it is being presently utilized in substantially, if not identically, the same manner and for like purposes as when the ordinance was put into effect. Further, it is not made to appear that the general area in which this lot is situated has been materially altered in any particular, save for conversion of some of the commercial buildings into residences, since the ordinance was enacted.

The burden of establishing by relevant evidence the conditions upon which the variance may be granted here rested upon respondents. In 62 C. J. S., Municipal Corporations, § 227(12), p. 543, it is said that "* * * the court must consider all the relevant evidence available; and, in order to warrant the granting of a variance or exception, there must be satisfactory proof or certification of the existence of the circumstances or conditions contemplated by the statute or ordinance, *and the burden of proof rests on applicant, the presumption being that the ordinance is reasonable in its application.*" (Emphasis added.)

Another consideration of prime importance is the fact that it is not shown that this particular piece of property suffers a singular disadvantage through the operation of the zoning regulation involved. There is nothing to indicate that this site is in anywise unique or different from all other waterfront property in this particular residential zone. The Special Referee and the learned Circuit Judge each found and held that there was a large area of land owned by the State Ports Authority located within this "B" residential district similar to the lot in question. Such finding has not been challenged in this Court and so it must be accepted as accurate. Not only is there no proof that the particular property under consideration suffers a singular disadvantage from the op-

eration of the zoning ordinances but on the contrary, it affirmatively appears that any disadvantage to the same is suffered generally by the entire area of which this is but a small part. Quoting again from 62 C. J. S., Municipal Corporations, § 227(11), p. 536, "It is necessary that the property suffer some unusual hardship from application of the regulation different from, and greater than, that suffered by other property in the district, and, if the premises have substantially the same value for permitted uses as other property, a variance is not warranted on the ground that the owner would find it more profitable or convenient to put it to a prohibited use." See also quotation from *Hodge v. Pollock, supra.*

Even if it be conceded, however, that the facts of this case make it doubtful whether the variance should be granted, the controversy must nevertheless be resolved in favor of appellants. Further quoting from *Hodge v. Pollock, supra:* " 'This (power to grant variance) is an exceptional power which should be sparingly exercised and *can be validly used only where a situation falls fully within the specified conditions.'* " (Emphasis added.) *Lee v. Board of Adjustment, supra.* Taking the view of the evidence most favorable to respondents leads to no other reasonable conclusion than that a doubtful case for variance has been made out and such is not sufficient to sustain the judgment below.

The action of the Board of Adjustment is set aside, and the Order appealed from is reversed.

STUKES and TAYLOR, JJ., concur.

OXNER, J., dissents.

LEGGE, J., did not participate.

OXNER, Justice (dissenting).

The Board of Adjustment, in the exercise of its discretion, granted a variance. The Referee, an outstanding member of the Orangeburg Bar, after taking considerable testimony

and viewing the locale, concluded that the facts fully justified a variance. His report was confirmed by the Circuit Judge. There is no showing that the decision of the Board of Adjustment is "arbitrary or clearly erroneous." *Hodge v. Pollock,* 223 S. C. 342, 75 S. E. (2d) 752, 754. On the contrary, I think the conclusion reached is eminently correct.

The following factual findings of the Referee are fully sustained by the evidence:

"I further find that the proposed restaurant site lies to the east of Concord Street along the water front, and that all of the appellants objecting to the variance reside and/or own property to the west of Concord Street.

"I further find that a considerable area lying between East Bay and Concord Streets, South of Broad Street, in the City of Charleston, is occupied by business and industrial establishments with the exception of certain residences and apartments located on Tradd Street or South Adgers Wharf Street, which street leads to the proposed restaurant site, but is not the only street giving access to said site.

"I further find that the State Ports Authority owns much valuable property along the water front east of Concord Street which has long been used for business and commercial purposes, is now being used for business and commercial purposes, and which has no real value for residential sites or purposes.

"I further find that the proposed restaurant site has a value for commercial or business purposes of approximately Eleven Thousand Five Hundred ($11,500.00) Dollars, and that it has no value as a residential site.

"I further find that the appellee Charleston Lobster House, Inc., proposes to erect on the site an attractive and expensive building.

"I further find that while admittedly the erection of a restaurant or other commercial enterprise in a strictly residential area is usually detrimental to residential property values, the erection by the appellee, Charleston Lobster

House, Inc., of the proposed structure will greatly improve the general appearance of the neighborhood, many present structures being in a most dilapidated condition.

"I further find that the leased proposed restaurant site consists partially of filled in land, partially of a concrete dike, and partially of land lying below mean high water level.

"I further find that the property, known generally as Adgers Wharf, owned by the State Ports Authority, is not adaptable for use as a deep water terminal for ocean-going traffic.

"I further find that, in the exercise of its discretion, the State Ports Authority has, in utilizing and developing property under its control, leased for substantial revenue and now leases other portions of Adgers Wharf for business and commercial purposes.

"I further find that the proposed restaurant site has been used for commercial or non-conforming uses within one year prior to the application of the officers of the appellee Charleston Lobster House, Inc., for a permit to erect a restaurant thereon.

"I further find that the proposed restaurant site is peculiarly suitable for the particular purpose for which it has been leased and that it is unsuitable and could not appropriately or economically be used as a residential site.

"I further find that the leased lot adjoins other property belonging to the State Ports Authority and the existing commercial and business use of the adjoining property renders it reasonably impractical for the State Ports Authority to improve the leased lot in the absence of a variance from, or modification of, the Zoning Ordinance of the City of Charleston.

"I further find that while the officers of the appellee, Charleston Lobster House, Inc., have a pecuniary interest in this cause, they also have a civic interest; have been and are extremely active in increasing tourist trade in the

Charleston area; and have spent considerable time in an effort to find a suitable location for the proposed restaurant to the end that it will be, when constructed, a tourist attraction and a substantial asset to the City of Charleston.

"I further find that the officers of the Charleston Lobster House, Inc., after considerable search and exploration, selected the proposed restaurant site as the only available, suitable site in the City of Charleston for the erection and operation of the type of restaurant which they propose.

"I further find that the City of Charleston does not now have a water front, sea-food restaurant, considered a tourist attraction, such as is proposed by the appellee, Charleston Lobster House, Inc.

"I further find that a water front, sea-food restaurant constructed and operated in accordance with the proposal of the appellee, Charleston Lobster House, Inc., will constitute a much needed asset for the City of Charleston, which caters to the tourist trade, and will therefore be in the public interest and welfare.

"I further find that a literal enforcement of the provisions of the Zoning Ordinance of the City of Charleston, in this case, will result in unnecessary hardship and exceptional practical difficulty to the lessor and the lessee."

In the Referee's conclusions of law, he stated:

"Forced abandonment of property, without compensation, works a hardship whether the owner be a public or a private entity. Some of the witnesses for appellants readily and frankly admitted that it was the hope and purpose of the appellants to eventually force the State Ports Authority to completely abandon, without any compensation whatsoever, all of its valuable holdings in this particular area, which could never be practically, economically or feasibly used or developed as a residential site or sites. The State Ports Authority, a governmental agency, created for certain purposes, can and will suffer in my opinion, a hardship if it be

compelled to abandon, without compensation, assets of considerable value."

It must be conceded, as pointed out in *Hodge v. Pollock, supra,* that the power to grant a variance given to a board of adjustment must be sparingly exercised and only under exceptional circumstances, having due regard to the main purpose of a zoning ordinance to preserve the property rights of others. But here the proof shows that the property in question suffers a singular disadvantage through the operation of the zoning regulation. Indeed, the undisputed facts are to the effect that it can never be used for residential purposes. The denial of a variance in this case has the practical effect of confiscating the property of the State Ports Authority.

It is also true that the fact that the State Ports Authority acquired this property after it was zoned for residential purposes is a material consideration. Ordinarily one who purchases property after the enactment of a zoning regulation is not in a position to complain that a conforming use would work an "unnecessary hardship" upon him. 58 Am. Jur., Zoning, Section 209. But I do not think this factor is controlling where, as here, to require a conforming use would practicaly destroy the value of the property for which a variance is sought. If the State Ports Authority had attacked the validity of this zoning ordinance upon the ground that as applied to its property, the ordinance was confiscatory, the fact that it was in effect when the property was acquired would not constitute a valid defense. Likewise, such fact should not bar its right to a variance.

I would affirm the order under review.