489 S.E.2d 641

**RESTAURANT ROW ASSOCIATES and The Afterdeck, Inc., d/b/a Thee DollHouse, Respondent/Appellant,**

v.

**HORRY COUNTY, a Political Subdivision of the State of South Carolina, Appellant/Respondent.**

No. 2673.

Court of Appeals of South Carolina.

Heard May 8, 1997.

Decided June 9, 1997.

Rehearing Denied Sept. 4, 1997.

John P. Henry and Emma Ruth Brittain, both of The Thompson Law Firm, Conway, for appellant/respondent.

William D. Hanna, Jr., of Harris & Hanna, Surfside Beach; and Luke Charles Lirot, of Lirot & Dolan, Tampa, FL, for respondent/appellant.

PER CURIAM:

Restaurant Row Associates and The Afterdeck, Inc., d/b/a Thee DollHouse ("Thee DollHouse"), an adult entertainment establishment located in Horry County, brought this action on November 16, 1994, appealing the denial of its request for a variance from the Horry County Adult Entertainment Zoning Ordinance, Ordinance 92–89, by the Horry County Board of Adjustments and Zoning Appeals ("the Board"). The circuit court reversed the Board on the ground that its decision was arbitrary and capricious. Both parties appeal from the circuit court's order. We affirm in part and reverse in part.

## FACTS

Thee DollHouse commenced its business as an adult entertainment establishment in the area near the city of Myrtle Beach known as "the Grand Strand" in March 1988. Thee DollHouse is a business featuring entertainment in the form of recorded music and exotic dance performances by female dancers who are sometimes topless. The business also serves alcoholic beverages and offers a light dinner menu.

On September 30, 1989, a year and a half after Thee DollHouse commenced business, Horry County adopted Ordinance 92–89, which established adult entertainment zoning regulations. Under Ordinance 92–89, now codified in the Horry County Zoning Code as Section 526, businesses existing at the time of the ordinance's enactment that were in violation of the ordinance were granted a six-year amortization period in which to recoup their investments and seek other locations should they desire to continue as an adult use.

Thee DollHouse is a nonconforming use under the ordinance because it is located 350 feet from a residential district and therefore violates the requirement prohibiting the location of an adult entertainment establishment within 500 feet of a

residential district. The residential district in question is occupied by a golf course and contains no residences. The business is separated from this zoning district by the Atlantic Intracoastal Waterway.

On January 6, 1994, the Horry County Zoning Administrator wrote to Thee DollHouse, advising it that it was an "adult use" as defined by the County's Adult Use Zoning Regulations, and that its nonconforming use of the property would have to cease on or before January 1, 1995. Thee DollHouse responded by filing three separate petitions with the Board. The first challenged the strict definition of "Adult Cabaret" as used in the ordinance. The second alleged that Ordinance 26–90, an ordinance passed after 92–89, effectively grandfathered in Thee DollHouse's adult use. The third petition requested a variance from the setback and amortization provisions of 92–89 based in part on the fact that the only residential property that rendered Thee DollHouse "nonconforming" was a golf course located at least 350 feet across the Atlantic Intracoastal Waterway.

The Board heard the petitions on September 12, 1994. In the course of the Board's hearing of Thee DollHouse's petition for the variance, the Board received a staff report prepared by the Horry County Zoning Administrator. The report stated that Thee DollHouse had to meet the four criteria found in S.C.Code Ann. § 6–7–740(2) and in Horry County Ordinance 23–87. The Zoning Administrator made no recommendation to approve or deny the variance application.

R. Bruce McLaughlin, AICP, a consultant, testified for Thee DollHouse. He reviewed his credentials for the Board and was qualified as an expert in the field of land use planning. McLaughlin proceeded to offer extensive testimony, including a written report, supporting Thee DollHouse's claim that it met the variance criteria. The Board also heard comments from several members of the public before McLaughlin made some final rebuttal comments.

After hearing all the evidence, the Board denied Thee DollHouse's request for a variance as well as its other two petitions.

Thee DollHouse then appealed to the circuit court, which heard the three consolidated appeals on January 12, 1995.[1] The circuit court held Horry County Ordinance 26–90 did not grandfather in adult uses, but further held that the denial of Thee DollHouse's variance request was "arbitrary and clearly erroneous in light of the lack of any residence on the golf course and the natural barrier created by the Intracoastal Waterway." The court also noted the following facts: (1) the nearest residence is located over 1600 feet away; (2) Thee DollHouse is opposite a four-lane highway and major traffic artery; and (3) Thee DollHouse does not appear to adversely affect the surrounding neighborhood's crime rate, property values, or general quality of life.

## THE COUNTY'S APPEAL

The County argues the circuit court erred in reversing the Board's denial of the variance, arguing the Board correctly found Thee DollHouse failed to prove an unnecessary hardship.[2] We agree.

A zoning board's findings of fact are final and conclusive on appeal. *Bishop v. Hightower*, 292 S.C. 358, 356 S.E.2d 420 (Ct.App.1987). Appeal to the circuit court is only for a determination of whether the board's decision is correct as a matter of law. *Id.*; S.C.Code Ann. § 6–7–780 (1976). On appeal from the circuit court, the Zoning Board's decision should not be interfered with "unless it is arbitrary or clearly erroneous." *Bishop*, 292 S.C. at 360, 356 S.E.2d at 421.

The statutory authority of the Board to grant a variance is governed by S.C.Code Ann. § 6–7–740 (1976 & Supp.1996), which provides as follows:

The board of appeals ... shall have the following powers:

\*    \*    \*    \*    \*    \*

(2) To authorize upon appeal in specific cases a variance from the terms of the ordinance or resolution as will not

1. On January 6, 1995, the circuit court granted Thee DollHouse's motion to stay enforcement until the January 12, 1995, hearing.

2. Because we reverse on this ground, we do not address the County's remaining arguments.

be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of the ordinance or resolution will, in an individual case, result in unnecessary hardship, so that the spirit of the ordinance or resolution shall be observed, public safety and welfare secured, and substantial justice done. Such variance may be granted in such individual case of unnecessary hardship upon a finding by the board of appeals that:

> (a) There are extraordinary and exceptional conditions pertaining to the particular piece of property in question because of its size, shape, or topography, and

> (b) The application of the ordinance or resolution of this particular piece of property would create an unnecessary hardship, and

> (c) Such conditions are peculiar to the particular piece of property involved, and

> (d) Relief, if granted, would not cause substantial detriment to the public good or impair the purposes and intent of the ordinance or resolution or the comprehensive plan, provided, however, that no variance may be granted for a use of land or building or structure that is prohibited in a given district by ordinance or resolution.

▪ The County specifically adopted this statutory language in Section 1204(B) of its zoning ordinance. Thee Doll-House, as the variance applicant, bore the burden of establishing the existence of each of the four criteria set forth in Section 6-7-740 for a variance to be granted. *Simmons v. Board of Adjustment*, 226 S.C. 459, 85 S.E.2d 708 (1955).

Practical difficulty or unnecessary hardship, to ground a variance, is not mere hardship, inconvenience, interference with convenience or economic advantage, disappointment in learning that land is not available for business uses, financial or pecuniary hardship or disadvantage, loss of prospective profits, prevention of an increase of profits, or prohibition of the most profitable use of property.... And it is not per se a sufficient reason for a variance that a nonconforming use is more profitable to the landowner, or that his land is better adapted for a forbidden use than for the one which is permitted.

*McQuillin Mun. Corp.*, § 25.168 (3rd ed. 1991) (footnotes omitted); *see Simmons*, 226 S.C. 459, 85 S.E.2d 708 (financial disadvantage in property value and income to single property owner from application of zoning restrictions does not constitute an "unnecessary hardship"); *Pike v. Zoning Board of Appeals*, 31 Conn.App. 270, 624 A.2d 909 (1993) (mere decrease in property value or other financial loss will not ordinarily constitute "hardship" sufficient to mandate issuance of a variance; financial impact must be such that zoning board could reasonably find that application of regulations to property greatly decreases or practically destroys its value for any of the uses to which it could reasonably be put and where regulations, as applied, bear so little relationship to purposes of zoning that, as to particular premises, regulations have a confiscatory or arbitrary effect); *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E.2d 128 (1946) (deprivation of better earning by means of nonconforming use does not constitute an "unnecessary hardship").

▆▆ Here, Thee DollHouse presented no evidence suggesting there was no feasible conforming use for the land in question.[3] The burden of proof in the proceeding before the Board was totally on the applicant, Thee DollHouse. Neither the County nor any other person had to prove that there was a feasible conforming use for the land. The Board was therefore correct to find that Thee DollHouse failed to prove an unnecessary hardship and, consequently, the circuit court erred in reversing the Board.

## THEE DOLLHOUSE'S APPEAL

In its cross-appeal, Thee DollHouse argues the circuit court erred in concluding that County Ordinance 26–90, which amended certain subsections of § 500 of the County's zoning ordinance, repealed the amortization period established in § 526.2J of Ordinance 92–89, and therefore grandfathered in all nonconforming adult entertainment uses. We disagree.

▆▆ It is well settled that, when interpreting an ordinance, legislative intent must prevail if it can be reasonably

---

**3.** In fact, Thee DollHouse did not introduce any evidence that it would even incur a *financial* loss if it was forced to clothe its dancers.

discovered in the language used. *Charleston County Parks and Rec. Comm'n v. Somers,* 319 S.C. 65, 459 S.E.2d 841 (1995). An ordinance must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *Id.* The determination of legislative intent is a matter of law. *Id.*

Repeals by implication are not favored by courts and to repeal a statute because of an asserted conflict or repugnancy with another statute, "the repugnancy must not only be plain, but the provisions of the two statutes must be incapable of any reasonable reconcilement; for if they can be construed so that both can stand, the Court will so construe them." *City of Rock Hill v. SCDHEC,* 302 S.C. 161, 167, 394 S.E.2d 327, 331 (1990). "As a general rule, a statute of a specific nature is not to be considered as repealed in whole or in part by a later general statute, unless there is direct reference to the former or the intent of the legislature to repeal it is explicitly implied therein." *Spartanburg County DSS v. Little,* 309 S.C. 122, 125, 420 S.E.2d 499, 501 (1992).

Section 500, as originally enacted in 1987, provided in pertinent part:

*500. Nonconforming Buildings or Uses*

Nonconforming buildings or land uses are declared by this Ordinance to be incompatible with permitted uses in the Districts involved. However, to avoid undue hardship, the lawful use of any buildings or land uses at the time of enactment or amendments of this Ordinance may be continued even though such use does not conform with the provisions of the Ordinance except that the nonconforming building or land use shall not be:

500.1 Changed to another nonconforming use;

500.2 Enlarged or altered in excess of an additional twenty (20%) percent of existing floor area, in a way which increases its nonconformity provided that it meets the requirements for the district. Such enlargements may be made one time only.

500.3 Nothing in this section shall be deemed to prevent the strengthening or restoring to a safe condition any building or part thereof declared to be unsafe by an official charged with protecting the public safety, upon order of such official.

In 1989, the Adult Entertainment Establishment Ordinance 92–89 was adopted and was codified as § 526 of the County Code. Section 526.2J of Ordinance 92–89 provided an amortization schedule for all nonconforming adult entertainment establishments at the time of the adoption of the ordinance. It specified a six-year amortization schedule running from September 30, 1989, until January 1, 1995.[4]

Section 500 of the original zoning ordinance was then amended by Ordinance 26–90 in 1990, to provide as follows:

*500. Nonconforming Buildings or Uses*

Nonconforming buildings or land uses are declared by this ordinance to be incompatible with permitted uses in the Districts involved. However, to avoid undue hardship, the lawful use of any buildings or land uses at the time of enactment or amendments of this Ordinance may be continued even though such use does not conform with the provisions of the Ordinance except as follows:

500.1 The nonconforming building or land shall not be changed to another nonconforming use.

---

4. Section 526.2J provides as follows:

*Amortization.* The right to maintain a legal non-conforming adult entertainment establishment shall terminate in accordance with the following schedule:

| Amount of capital Investment * as of the Effective Date of this Ordinance 1 | | | Date Before Which Use Shall Terminate |
|---|---|---|---|
| 0 | to | 5,000 | January 1, 1991 |
| 5,001 | to | 8,000 | January 1, 1992 |
| 8,001 | to | 15,000 | January 1, 1993 |
| 15,001 | to | 22,000 | January 1, 1994 |
| 22,001 | or more | | January 1, 1995 |

* NOTE: The term "capital investment," as used above, is defined to mean the initial outlay by the owner or operator of the use to establish the business as of the date of the enactment of the ordinance, exclusive of the fair market value of the structure in which the use is located.

1 This ordinance is to take effect on September 30, 1989.

500.2  *ENLARGEMENTS AND ALTERATIONS*

A. The nonconforming building, if it houses an allowed land use, may be enlarged or altered to any degree provided that the enlargement or alteration meets all setbacks and other requirements of the district.

B. Any building or structure, conforming or nonconforming, which houses a nonconforming land use shall not be enlarged or altered in excess of twenty (20%) percent of existing floor area. The twenty (20%) percent expansion can only occur if all applicable district requirements (setbacks, height restrictions, etc.) are met. If not, the twenty (20%) percent expansion shall be prohibited.

■ After reviewing the ordinances in question, we agree with the Board and the circuit court that the ordinances are capable of a reasonable reconcilement, namely, that Ordinance 26–90 was intended merely to amend subsections 500.1 and 500.2. It would appear that the ordinance's original language was restated in Ordinance 26–90 with the changes made therein simply to provide the context of the language under consideration. We find, therefore, that the circuit court was correct to hold that the amortization period continued to apply to Thee DollHouse's nonconforming use.

**AFFIRMED IN PART AND REVERSED IN PART.**

HEARN, STILWELL and HOWARD, JJ., concur.