516 S.E.2d 442

**RESTAURANT ROW ASSOCIATES and The Afterdeck, Inc., d/b/a Thee DollHouse, Petitioners,**

v.

**HORRY COUNTY, a Political Subdivision of the State of South Carolina, Respondent.**

No. 24944.

Supreme Court of South Carolina.

Heard Jan. 5, 1999.
Decided May 17, 1999.
Rehearing Denied June 23, 1999.

210

Luke Charles Lirot, of Luke Charles Lirot, P.A., of Tampa, Florida; and Willard D. Hanna, of Harris & Hanna, P.A., of Myrtle Beach, for petitioners.

Emma Ruth Brittain and John P. Henry, of Thompson Law Firm, of Conway, for respondent.

TOAL, Justice:

This case is on appeal from the Court of Appeals' decision upholding the denial of Petitioner's zoning variance. We affirm as modified.

### FACTUAL/PROCEDURAL BACKGROUND

Petitioners Restaurant Row Associates and the Afterdeck d/b/a Thee DollHouse ("Thee DollHouse") began its adult entertainment business in Horry County ("the County") in March 1988. On September 30, 1989, the County adopted Ordinance 92–89, establishing adult entertainment zoning regulations. Ordinance 92–89, now codified in the Horry County Zoning Code as section 526, granted a six-year amortization period to businesses existing at the time of the ordinance's enactment that were in violation of the ordinance so that they

could recoup their investments and seek other locations should the business desire to continue as an adult use.

The zoning plan prohibits the location of an adult entertainment establishment within 500 feet of a residential district. Thee DollHouse is a nonconforming use under the ordinance because it is located 350 feet from a residential district. Almost all of this 350 feet consists of the Atlantic Intracoastal Waterway that separates Thee DollHouse from the residential district. This residential district is comprised of a golf course and currently contains no residential development.

In early 1994, the Horry County Zoning Administrator wrote to Thee DollHouse, advising it that it was an "adult use" as defined by the County's Adult Use Zoning Regulations, and that its nonconforming use of the property would have to cease on or before January 1, 1995. Thee DollHouse responded by filing three separate petitions with the Horry County Board of Adjustments and Zoning Appeals ("the Board"). The first petition challenged the definition of "Adult Cabaret" as used in the ordinance. The second petition alleged that Ordinance 26–90, an ordinance passed after 92–89, effectively grandfathered in Thee DollHouse's adult use. The third petition requested a variance from the setback and amortization provisions of 92–89.

During the Board meeting, the Zoning Administrator made no recommendation to approve or deny the variance application. A paid consultant testified extensively for Thee Doll-House. The consultant offered testimony, including a written report, supporting Thee DollHouse's claim that it met the variance criteria. The Board also heard comments from several members of the public.

After hearing all the evidence, the Board denied Thee DollHouse's request for a variance as well as its other two petitions. Thee DollHouse then appealed the Board's decisions to the circuit court. The circuit court upheld the Board's determination that Horry County Ordinance 26–90 did not grandfather in adult uses, but nevertheless held that the denial of Thee DollHouse's variance request was "arbitrary and clearly erroneous in light of the lack of any residence on the golf course and the natural barrier created by the Intracoastal Waterway."

The Court of Appeals found the circuit court erred in reversing the Board's denial of the variance. *Restaurant Row Associates v. Horry County,* 327 S.C. 383, 390, 489 S.E.2d 641, 645 (Ct.App.1997). The Court of Appeals held the Board correctly found Thee DollHouse failed to prove the element of unnecessary hardship. Having determined Thee DollHouse failed to meet one of the four necessary elements of a variance, the Court of Appeals did not discuss the remaining three elements. The Court of Appeals also disagreed with Thee DollHouse's argument that the circuit court erred in concluding that County Ordinance 26–90, which amended certain subsections of § 500 of the County's zoning ordinance, repealed the amortization period established in § 526.2J of Ordinance 92–89, and therefore grandfathered in all nonconforming adult entertainment uses. This Court granted certiorari to consider the following issue:

> Did the Court of Appeals err in reversing the circuit court and thereby upholding the Zoning Board's determination that Thee DollHouse failed to meet the standards for receiving a variance?

## LAW/ANALYSIS

Thee DollHouse argues that the Court of Appeals erred by failing to find the Board acted arbitrarily and capriciously in denying the variance. We disagree.

When deciding whether to grant a variance, a local board must be guided by standards which are specific in order to prevent the ordinance from being invalid and arbitrary. *Hodge v. Pollock,* 223 S.C. 342, 75 S.E.2d 752 (1953); *Schloss Poster Adv. Co. v. City of Rock Hill,* 190 S.C. 92, 2 S.E.2d 392 (1939). "The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *City of Beaufort v. Baker,* 315 S.C. 146, 152, 432 S.E.2d 470, 472 (1993). Here, the County specifically adopted the statutory language of S.C.Code Ann. § 6–7–740 (1976 & Supp.1998) in Section 1204(B) of its zoning ordinance. That section provides:

The board of appeals ... shall have the following powers:

(2) To authorize upon appeal in specific cases a variance from the terms of the ordinance or resolution as will not be contrary to the public interest where, owing to special conditions, a literal enforcement of the provisions of the ordinance or resolution will, in an individual case, result in unnecessary hardship, so that the spirit of the ordinance or resolution shall be observed, public safety and welfare secured, and substantial justice done. Such variance may be granted in such individual case of unnecessary hardship upon a finding by the board of appeals that:

(a) There are extraordinary and exceptional conditions pertaining to the particular piece of property in question because of its size, shape, or topography, and

(b) The application of the ordinance or resolution of this particular piece of property would create an unnecessary hardship, and

(c) Such conditions are peculiar to the particular piece of property involved, and

(d) Relief, if granted, would not cause substantial detriment to the public good or impair the purposes and intent of the ordinance or resolution or the comprehensive plan, provided, however, that no variance may be granted for a use of land or building or structure that is prohibited in a given district by ordinance or resolution.

In order to grant a variance, the Board must make the factual determination that each of the four elements above favor granting the variance. *See Dolive v. J.E.E. Developers, Inc.*, 308 S.C. 380, 418 S.E.2d 319 (Ct.App.1992). Granting a variance is an exceptional power which should be sparingly exercised and can be validly used only where a situation falls fully within the specified conditions. *Hodge v. Pollock*, 223 S.C. 342, 75 S.E.2d 752 (1953). A strong presumption exists in favor of the validity and application of zoning ordinances. *Peterson Outdoor Advertising v. City of Myrtle Beach*, 327 S.C. 230, 235, 489 S.E.2d 630, 632 (1997). In the context of zoning, a decision of a reviewing body, in this case the Horry County Board of Adjustments and Zoning Appeals, will not be disturbed if there is evidence in the record to support its decision. *Id.*

■■■■ A court will refrain from substituting its judgment for that of the reviewing body, even if it disagrees with the decision. *Peterson,* 327 S.C. at 235, 489 S.E.2d at 632. However, a decision of a municipal zoning board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion. *See id.; Knowles v. City of Aiken,* 305 S.C. 219, 407 S.E.2d 639 (1991); *Hodge v. Pollock,* 223 S.C. 342, 75 S.E.2d 752 (1953); *Gurganious v. City of Beaufort,* 317 S.C. 481, 454 S.E.2d 912 (Ct.App.1995). This Court has summarized its standard of review in zoning appeals as follows:

> It is a well settled proposition of zoning law that a court will not substitute its judgment for the judgment of the board. The court may not feel that the decision of the board was the best that could have been rendered under the circumstances. It may thoroughly disagree with the reasoning by which the board reached its decision. It may feel that the decision of the board was a substandard piece of logic and thinking. None the less, the court will not set aside the board's view of the matter just to inject its own ideas into the picture of things.

*Talbot v. Myrtle Beach Board of Adjustment,* 222 S.C. 165, 173, 72 S.E.2d 66, 70 (1952). As the variance applicant in this case, Thee DollHouse bore the burden of proving its entitlement to a variance. *Application of Groves,* 226 S.C. 459, 85 S.E.2d 708 (1955). If Thee DollHouse failed to meet the requirements of each element of the ordinance, then the Board correctly denied the variance.

Thee DollHouse argues that the Court of Appeals applied an incorrect standard for determining the unnecessary hardship element of the zoning ordinance. We agree, but nonetheless conclude that Thee DollHouse has failed to prove unnecessary hardship. The Court of Appeals held there was no unnecessary hardship because Thee DollHouse failed to present evidence suggesting "there was no feasible conforming use for the land in question." *Restaurant Row Associates v. Horry County,* 327 S.C. 383, 390, 489 S.E.2d 641, 645. Such a standard is akin to a Fifth Amendment regulatory taking analysis. *See Staubes v. City of Folly Beach,* 331 S.C. 192, 500 S.E.2d 160 (Ct.App.1998) ("[W]hen the owner of real property has been called upon to sacrifice all economically beneficial

uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking.").

■ Variance applicants are not required to prove that without the variance there exists no feasible conforming use for the property in question in order to show unnecessary hardship. This Court has upheld the granting of variances where there were feasible conforming uses of the property. *See Hartman v. City of Columbia*, 268 S.C. 44, 232 S.E.2d 15 (1977) (holding that zoning board of adjustment abused its discretion in denying landowner's request for variance to permit her to establish child day care center in her brick, residence type house located in residential district); *Stevenson v. Board of Adjustment of City of Charleston*, 230 S.C. 440, 96 S.E.2d 456 (1957) (granting of variance to a church for construction and occupancy of addition for Sunday school was not abuse of discretion); *see also Dolive v. J.E.E. Developers, Inc.*, 308 S.C. 380, 418 S.E.2d 319 (Ct.App.1992) (granting a variance in offsite parking requirements for commercial use of a beachfront lot).

In South Carolina, "The courts have never undertaken to formulate an all-inclusive definition of 'unnecessary hardship'. Although it has been stated that the phrase should be given a reasonable construction, it is recognized that it does not lend itself to precise definitions automatically resolving every case." *Stevenson v. Board of Adjustment of City of Charleston*, 230 S.C. 440, 448, 96 S.E.2d 456, 460 (1957); *Application of Groves*, 226 S.C. 459, 463, 85 S.E.2d 708, 709–10 (1955); *Hodge v. Pollock*, 223 S.C. 342, 348, 75 S.E.2d 752, 754 (1953). These cases support Thee DollHouse's position that the unnecessary hardship standard is not the same, or as demanding as, a takings analysis.

■ Although there is no set definition, this Court has established guidelines for determining "unnecessary hardship." First, a claim of unnecessary hardship cannot be based upon conditions created by the owner nor can one who purchases property after the enactment of a zoning regulation complain that a nonconforming use would work an unnecessary hardship upon him. *Rush v. City of Greenville*, 246 S.C. 268, 143 S.E.2d 527 (1965). Thee DollHouse was in operation before the enactment of the County's adult uses ordinance so

this situation is not before the Court. Second, "before a variance can be allowed on the ground of 'unnecessary hardship', there must at least be proof that a particular property suffers a singular disadvantage through the operation of a zoning regulation." *Application of Groves*, 226 S.C. 459, 463, 85 S.E.2d 708, 710 (1955). S.C.Code Ann. § 6–7–740(2)(c) addresses this precedent by requiring that variance applicants show "Such conditions are peculiar to the particular piece of property involved." Lastly, financial hardship does not automatically constitute unnecessary hardship. *Application of Groves*, 226 S.C. at 464, 85 S.E.2d at 710. ("assuming that they will suffer substantially in a financial way . . . that alone is not sufficient [to grant a variance].").

█ Thee DollHouse's claims of business disruption, loss of goodwill, relocation costs, and contractual obligations to the existing location all fall under the scope of its financial hardship. However, these claims alone do not automatically constitute unnecessary hardship, and in this case the Board concluded that they did not. It is important to remember that Thee DollHouse can continue in its existing location, the only restriction is that it cannot operate as an adult use without a variance. This situation is very different from the one found in *Bennett v. Sullivan's Island Bd. of Adjustment*, 313 S.C. 455, 438 S.E.2d 273 (Ct.App.1993), where the landowner was entitled to a variance since the land was zoned residential and, without the variance, the landowner had no other possible use for the property.

Thee DollHouse argues that if it must relocate there will be at least a temporary loss of First Amendment rights, in addition to financial hardship, and this will constitute unnecessary hardship. Thee DollHouse argues that any loss of First Amendment rights would be unnecessary hardship because its business does not produce the secondary effects that allow the regulation of adult business under the First Amendment. We disagree.

█ Thee DollHouse argues that denying the variance was an unconstitutional application of the ordinance. Initially, the ordinance itself is constitutional under the decisions of the United States Supreme Court in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310

(1976), *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), and this Court's opinion in *Centaur, Inc. v. Richland County,* 301 S.C. 374, 392 S.E.2d 165 (1990). Like the ordinances in *Young, Renton,* and *Centaur,* the County's ordinance is not aimed at the content of the speech, but rather at the secondary effects of such businesses on the surrounding community.[1] Local governments have a substantial interest in protecting their neighborhoods from secondary effects related to the operation of sexually oriented businesses. *See Young, Renton, supra.* "Content-neutral" ordinances, such as the County's, designed to regulate the secondary effects of adult businesses, are therefore properly examined and analyzed as "time, place, and manner" regulations.

The County's zoning ordinance is a proper time, place, and manner restriction because it does not unreasonably limit "alternative avenues of communication." *See Renton,* 475 U.S. at 45, 106 S.Ct. at 928, 89 L.Ed.2d at 37; *Condor, Inc. v. City of North Charleston,* 328 S.C. at 177 n. 3, 493 S.E.2d at 345 n. 3. On appeal, Thee DollHouse does not contest that there are areas of the County where the zoning scheme would allow it to operate as an adult business. With the County having met the *Renton* criteria, the burden of proof rests upon Thee DollHouse to prove the ordinance is unconstitutional as applied to it.

■ Even though the County's zoning ordinance is constitutionally valid, Thee DollHouse argues that the Board applied it unconstitutionally by denying the variance. Thee DollHouse argues that it provided unrebutted testimony to the

---

1. The ordinance provides:
 > WHEREAS, by enacting Ordinance Number 92–89, the Horry County Council intended to prevent the recognized ill effects of allowing adult entertainment establishments too close to residential areas; and
 > WHEREAS, residential use existing in zones other than the ones specifically delineated in Section 526.2(C)1 as residential are incompatible with and suffer a serious risk of harm by the location of an adult entertainment establishment near them, for the reasons outlined in the studies referenced in Ordinance Number 92–89, which studies are incorporated herein by reference as if set forth herein verbatim;
 > Horry County Ordinance Number 29–92.

Board that it did not produce any negative secondary effects. Thee DollHouse's position is that the Board cannot deny a variance if there was no proof introduced to the Board that Thee DollHouse created any negative effects. We disagree.

 *Renton* recognized that local governments need not wait for the secondary effects of adult businesses to actually manifest themselves before implementing zoning restrictions. In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), Justice Souter's concurring opinion recognized that local governments did not have to repeatedly litigate the issue of whether adult businesses create any secondary effects or not. *Barnes*, 501 U.S. at 583–584, 111 S.Ct. at 2470 ("I do not believe that a State is required affirmatively to undertake to litigate [the secondary effects] issue in every case."). Adult businesses cannot exclude themselves from legitimate zoning regulation by providing expert testimony that they do not currently produce negative secondary effects. Local governments have the power to zone the location of adult businesses without any individualized showing the businesses produce negative secondary effects.[2] The purpose of zoning "is to enable municipalities and counties acting individually or in concert to preserve and enhance their present advantages, to overcome their present handicaps, and *to prevent or minimize such future problems as may be foreseen.*" S.C.Code Ann. § 6–7–10 (Supp.1998) (emphasis added).

 Thee DollHouse also argues that the natural barrier of the Atlantic Intracoastal Waterway prevents even the possibility of negative secondary effects from arising in the

---

**2.** We note that the secondary effects doctrine from *Renton* distinguishes the current case from our decision in *Bannum, Inc. v. City of Columbia,* 335 S.C. 202, 516 S.E.2d 439 (1999). In *Bannum,* this Court noted that the zoning board of appeals either "discounted or disregarded every single bit of evidence" put up by a special exception applicant. In adult use zoning cases, a reviewing body must take the expert testimony of the applicant into consideration, but the zoning board of appeals still has the authority to deny the variance if its zoning ordinance is constitutionally proper. In the current case, the County was not required to have testimony confirming that Thee DollHouse produced negative secondary effects in order to deny the variance.

future. This Court requires distance measurements of this nature be done "as the crow flies" and not based on the actual terrain that must be crossed. *See Brown v. State*, 333 S.C. 238, 510 S.E.2d 212 (1998) ("Courts addressing the issue have uniformly held proximity is measured in a straight line, or 'as the crow flies.' "). Thee DollHouse cites no cases to this Court in support of its "natural barrier" proposition.[3] As to the merits of this argument, testimony in front of the Board revealed that there is a bridge being constructed across the Atlantic Intracoastal Waterway very near Thee DollHouse. There is also a nearby tram that ferries persons across the Intracoastal Waterway. What this testimony shows is that even though there may be a natural barrier now, there may be a bridge in the future. As discussed above, zoning is not only concerned about present conditions, but focuses on the future as well.

The County's ordinance as applied to Thee DollHouse is constitutional. Other than the claim of a temporary loss of First Amendment rights during relocation and the financial hardship associated with such a move, Thee DollHouse did not produce for the Board evidence that would demand a finding of unnecessary hardship. Having failed to meet this required element of the variance criteria, the Board correctly denied Thee DollHouse's petition.

### CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is **AFFIRMED AS MODIFIED.**

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

**3.** *Vicary v. City of Corona*, 935 F.Supp. 1083 (C.D.Cal.1996), is the only case found in support of such a "natural barrier" theory. That case has since been overturned by the Ninth Circuit Court of Appeals. *See Vicary v. City of Corona*, 119 F.3d 8, 1997 WL 406768 (9th Cir.1997) (unpublished decision).