776 S.E.2d 749

Scarlet **WILLIAMS**, Appellant,

v.

**LEXINGTON COUNTY BOARD OF ZONING APPEALS**, Respondent.

Appellate Case No. 2013–000314.

No. 5349.

Court of Appeals of South Carolina.

Heard Dec. 9, 2014.

Decided Sept. 2, 2015.

648

Renae Stacie Alt–Summers, of Columbia, for appellant.

Jeffrey M. Anderson and William Joseph Maye, both of Davis Frawley, LLC, of Lexington; for respondent.

McDONALD, J.

Appellant Scarlet Williams seeks review of the circuit court's order upholding the Lexington County Board of Zoning Appeals' unanimous decision that the county zoning ordinance prohibits Williams from operating a dog grooming business at her home. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Scarlet Williams resides in the Richmond Farms subdivision of Lexington County. Prior to any events relevant to this case, Williams converted her single-car garage into an additional living space with a modified shower for her mother-in-law. When Williams' mother-in-law moved into an assisted living facility, Williams left her job as a dog groomer at PetSmart and began grooming dogs for friends and neighbors in the converted garage.

In the summer of 2010, Walt McPherson, the Lexington County Zoning Administrator, received an anonymous letter regarding Williams' in-home dog grooming business.[1] McPherson then contacted Williams and determined that dog grooming services were in fact being performed at her home.

In September 2011—over a year after receiving the first letter—McPherson received another anonymous letter reporting that Williams was running a dog grooming business from her home. McPherson again contacted Williams about "trying to get her into compliance with the Zoning Ordinance[,] . . .

---

1. McPherson explained that his office received three anonymous letters about the dog grooming business—the first in 2010, the second in September 2011, and the third in November 2011. These letters were not introduced as evidence at the initial hearing.

issuing a zoning permit, maybe a home occupation zoning permit, [or] . . . [trying] an alternate location."

McPherson opined that he could not issue Williams a regular zoning permit because her street's zoning classification is "Resident Local 5" (RL5). Section 22.00 of the Lexington County Zoning Ordinance[2] (County Ordinance) defines an RL5 street as "[a] street with frontage over 50 percent residentially developed . . . or platted as a residential subdivision." Section 22.00 explains that "[t]his type street is intended to accommodate some residential activities at five dwelling units per acre. Access will be limited to this type development and allowed home occupations or accessory activities."

McPherson also stated that because Appellant's street was zoned RL5, activities that fell within the "Kennels, Catteries, and Stables" classification of the County Ordinance were prohibited.

> *Kennels, Catteries, and Stables* include any person, establishment, partnership, corporation, or other legal entity that owns, keeps, harbors, or is custodian of domestic animals and/or domestic fowl kept or used for stud for which a fee is charged and/or for breeding purposes for which a fee is charged for the offspring, or for the purpose of commercial boarding, *grooming,* sale[ ], or training. Animal rescue and/or adoption facilities, whether operated for profit or as a non-profit organization, shall be included in this category. Activities under this category shall not include livestock and other farm animals used in customary and normal agricultural husbandry practices or fancier's kennel or cattery or an Animal Hospital maintained by a licensed veterinarian.

Lexington County, S.C., Code of Ordinances, art. 2, ch. 1, § 21.10 (2013) (emphasis added).

McPherson then reviewed the County Ordinance to determine whether the dog-grooming business could fall under the category of a "home occupation," an activity permitted within the RL5 zoning classification. Lexington County's home occupation guidelines, located in Chapter 1, Section 21.22 of the County Ordinance, state:

---

**2.** *See* Lexington County, S.C., Code of Ordinances, art. 2, ch. 1, § 22.00 (2013).

[A] home occupation is an accessory activity of a nonresidential nature which is performed within a dwelling unit, or within an accessory structure to a residence. It shall not occupy more than 25[%] of the total floor area of such dwelling unit and in no event occupy more than 750 square feet of floor area. A home occupation shall not include the manufacture or repair of transportation related equipment or animal impoundment activities (kennel) and shall be subject to the performance standards contained in this Ordinance as applicable. Home occupations shall require zoning permits in addition to those of their residential principal activities.

Lexington County, S.C., Code of Ordinances, art. 2, ch. 1, § 21.22 (2013).

Additionally, McPherson concluded that "since the definition of Kennels, Catteries, and Stables includes grooming[,] and the guidelines of the Home Occupation [category] include[ ] animal impoundment activities (kennel), [a] dog grooming service may not be permitted under the Home Occupation Zoning Permit."

McPherson determined that the private restrictions of the Richmond Farms subdivision would permit him to issue a home occupation permit for an administrative office only. In response, Williams requested written confirmation from the Richmond Farms Homeowners' Association Board (HOA Board) that her home-based dog grooming business did not violate the covenants and restrictions of the subdivision. After a closed executive board meeting, the HOA Board president confirmed in writing that "Williams' home based dog grooming business does not violate the covenants or restrictions of this community. This [HOA] Board has no objection to the grant of a home-based business zoning permit for Mrs. Williams' dog grooming business."

McPherson subsequently found that the County Ordinance's "home occupation" provision prohibited Williams from operating the dog grooming business at her residence. Williams appealed McPherson's decision to the Lexington County Board of Zoning Appeals (BZA). During its February 21, 2012 hearing, the BZA unanimously denied the appeal, finding that dog grooming was a prohibited activity for Williams'

residence under the County Ordinance. The circuit court affirmed this decision by order dated January 11, 2013. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err in affirming the BZA's denial of a home occupation permit for Williams' dog grooming business?

## STANDARD OF REVIEW

▆▆▆▆ "On appeal, we apply the same standard of review as the circuit court below: the findings of fact by the [BZA] shall be treated in the same manner as findings of fact by a jury, and the court may not take additional evidence." *Austin v. Bd. of Zoning Appeals*, 362 S.C. 29, 33, 606 S.E.2d 209, 211 (Ct.App.2004) (citing S.C.Code Ann. § 6–29–840(A) (Supp. 2014)). "In reviewing the questions presented by the appeal, the court shall determine only whether the decision of the Board is correct as a matter of law." *Id.* (citation omitted). "Furthermore, '[a] court will refrain from substituting its judgment for that of the reviewing body, even if it disagrees with the decision.' " *Id.* (citing *Rest. Row Assocs. v. Horry Cty.*, 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999)). "However, a decision of a municipal zoning Board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Id.* (citation omitted).

## LAW/ANALYSIS

▆▆▆ Williams argues the circuit court erred in affirming the BZA's decision to deny her a zoning permit for her dog grooming business. Specifically, Williams contends the home occupation exception under Section 21.22 permits her to engage in dog grooming—despite section 21.10's prohibition of permits for kennels—because the ordinary meaning of "kennel" does not include dog grooming. We disagree.

▆▆▆▆ The governing body's intent as embodied in an ordinance "must prevail if it can be reasonably discovered in the language used." *Charleston Cty. Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) (citation omitted). "[W]ords in a statute must be construed in context," and "the meaning of particular terms in a statute

may be ascertained by reference to words associated with them in the statute." *Eagle Container Co., LLC v. Cty. of Newberry,* 379 S.C. 564, 570, 666 S.E.2d 892, 895–96 (2008) (citation and quotation marks omitted). "If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning." *Id.* at 570–71, 666 S.E.2d at 896 (citation and quotation marks omitted).

Williams concedes "grooming" is explicitly included in the activities of a kennel pursuant to Section 21.10 [3] and would otherwise be prohibited where she lives. However, Williams argues the home occupation exception in Section 21.22 [4] only prohibits "animal impoundment activities (kennel[s] )," and because her dog grooming business is not a "kennel," the circuit court erred in finding this exception inapplicable.

Williams cites to several dictionary definitions of "kennel" in support of her argument that kenneling an animal—as prohibited in Section 21.22—does not include the act of dog grooming. However, because the County Ordinance—when read as a whole—plainly includes dog grooming within the ambit of a kennel, we need not resort to dictionary definitions. *See Eagle Container Co.,* 379 S.C. at 570, 666 S.E.2d at 896 ("If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the Court has no right to look for or impose another meaning." (citation omitted)). To that end, although the home occupation exception does not specifically enumerate "grooming" as a prohibited activity, we find that when Sections 21.10 and 21.22 are read in tandem, it is clear that domestic animal grooming is an activity included

---

**3.** The pertinent portion of Section 21.10 states that "[k]ennels ... include any ... establishment ... that keeps, harbors, or is a custodian of domestic animals ... for the purpose of commercial boarding, grooming, sale, or training." Lexington County, S.C., Code of Ordinances, art. 2, ch. 1, § 21.10 (2013).

**4.** Section 21.22 states, in relevant part, "A home occupation shall not include ... animal impoundment activities (kennel) and shall be subject to the performance standards contained in this Ordinance as applicable." Lexington County, S.C., Code of Ordinances, art. 2, ch. 1, § 21.22 (2013).

within the definition of "kennel" and that county council intended to prohibit any type of kennel activities from occurring in residences on an RL5 street.[5] *See Grant v. City of Folly Beach,* 346 S.C. 74, 79, 551 S.E.2d 229, 232 (2001) (noting "[i]t is well-settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result." (citation omitted)).

Therefore, we conclude the circuit court properly upheld the BZA's decision to deny Williams' request for a permit to operate a dog grooming service at her residence.

## CONCLUSION

Based on the foregoing, the circuit court's decision is

**AFFIRMED.**

WILLIAMS and GEATHERS, JJ., concur.

---

**5.** Further, although "kennel" is not defined in the "Definitions" section of the County Ordinance, we find this interpretation is in accordance with the provisions of the County Ordinance and is an appropriate classification based on the common functional characteristics of these two terms. *See* Lexington County, S.C., Code of Ordinances, art. 1, ch. 2, § 12.10 (2013) ("Except when definitions are specifically included in this text, words in the text of this Ordinance shall be interpreted in accordance with the provisions set forth in this section."); Lexington County, S.C., Code of Ordinances, art. 2, ch. 1, § 21.00 (2013) ("The purpose of this chapter is to classify all uses into a number of specially defined activities on the basis of common functional characteristics and similar compatibility with other uses.").